[No. B221482. Second Dist., Div. Three. Apr. 5, 2011.]

JAMES GARBELL et al., Plaintiffs and Appellants, v.
CONEJO HARDWOODS, INC., Defendant and Appellant.

## COUNSEL

Lieber Williams & Labin and Stanley P. Lieber for Plaintiffs and Appellants.

Brown, Brown & Klass, Robert L. Kaufman and John J. Stumreiter for Defendant and Appellant.

## OPINION

**ALDRICH, J.**—The smoke from a fire at the Calabasas home of James and Rita Garbell damaged their personal property. For their personal property loss, the Garbells' insurance company paid the policy limit of $424,050, which covered about half of their loss. The Garbells sued Conejo Hardwoods, Inc., to recover for their uninsured loss, and the Garbells' insurer sued Conejo Hardwoods in a separate subrogation action to recover what it paid the

Garbells. Workers from Conejo Hardwoods (the workers)[1] were installing hardwood flooring in the Garbells' house on the day of the fire.

The jury returned a verdict with findings that Conejo Hardwoods negligently caused the fire, attributing 55 percent of the fault to Conejo Hardwoods for the Garbells' total loss of $822,483.45, resulting in a judgment against Conejo Hardwoods of $452,365.90. The trial court then deducted the insurance payment of $424,050, which was at issue in the subrogation action, leaving a net recovery of $28,315.90.

The Garbells appeal the trial court's damages calculation, contending the trial court miscalculated comparative fault, but the Garbells' argument confuses the collateral source rule with the subrogation doctrine. Conejo Hardwoods cross-appeals, contending there was no substantial evidence presented on causation. We conclude sufficient evidence supports causation, and the trial court correctly calculated the judgment. We reverse, however, and remand for modification of the judgment and a reconsideration of Conejo Hardwoods's motion for costs.

## FACTUAL BACKGROUND

### 1. *A House Fire Damages the Garbells' House and Its Contents*

The origin of the fire that destroyed the Garbells' personal property was a 35-gallon garbage can located in their garage. The workers used the garage to store their materials and to cut the prestained flooring before installation.

Bryan Robertson was working on the day of the fire installing the hardwood floors. Robertson, along with another worker, smoked at the jobsite. They did not smoke in the garage. Robertson testified that during his breaks, he and another worker would sit on the edge of his truck parked on the street and have a cigarette. When they were done smoking, they would extinguish their cigarettes in a glass Snapple bottle that had a little liquid remaining in the bottle. At the end of the day, Robertson either threw the sealed Snapple bottle into the trash, or left it in his truck. If he threw the bottle into the trash, he sealed it by putting the cap back on the bottle. Robertson was sure he followed what he described as this "routine" on the day of the fire.

---

[1] Conejo Hardwoods hired a subcontractor, Krowpman Flooring and Tile, to install the floors. The workers at the Garbell house worked for Krowpman, which the jury found was Conejo Hardwoods's agent. There is no challenge to that finding. Thus, for purposes of this opinion, "workers" refers to Conejo Hardwoods. Based on the jury's agency findings, we also use "Conejo Hardwoods" to refer to Krowpman.

Neither one of the Garbells saw the workers smoking in the garage. The Garbells saw the workers smoking near the house by the driveway, but they did not see what the workers did with their discarded cigarettes.

The fire started after the workers left for the day. The Garbells were not at home.

### 2. *Cause of the Fire*

Causation was a principal issue at trial. The garbage can located in the garage was the point of origin, but it was almost completely destroyed in the fire.

Derek Olin is a fire investigator and was hired to investigate the fire scene to determine the cause of the fire. During the course of Olin's investigation, he learned that two of the workers smoked at the jobsite, and they told him at the end of the day they "either threw the glass container with the cigarette butts in it into this trash can with sawdust and wood shavings and trash or they dumped the cigarette butts out of the . . . Snapple bottle, into the trash can. They both couldn't agree which they did."

As he further investigated, Olin described the process: "I'm the gatherer of the information. I put it together and keep thinking, okay, analyzing, theorizing, did this happen, this happen, which way could it go, and in this case I came [*sic*] with the cigarettes in a trash can with sawdust, papers, trash. Could a cigarette start that trash on fire. Yes. It could." Thus, Olin concluded that a cigarette was one of the causes of the fire.

Olin eliminated all other causes of the fire except a discarded cigarette or spontaneous combustion. He testified, "I can also not tell you which one did it because both of them are in the same container, sorry."

On cross-examination, Olin testified that no glass Snapple bottle or glass shards were recovered from the fire. He also testified there was no trace of cigarettes.

Conejo Hardwoods's defense included discrediting Olin's testimony on causation, attributing the extensive smoke damage to the Garbells because the automatic closure mechanism from the fire door in the garage to the residence had been disconnected, and presenting the possibility that a third party's cigarette started the fire.

### PROCEDURAL BACKGROUND

Before the Garbells filed this action, their insurance company, Fire Insurance Exchange (FIE), filed a subrogation lawsuit against Conejo Hardwoods, *Fire*

*Ins. Exchange v. Conejo Hardwoods, Inc.* (Super. Ct. L.A. County, 2007, No. LC074342), to recover what FIE paid the Garbells to cover losses they suffered as a result of Conejo Hardwoods's negligence. FIE settled with Conejo Hardwoods.[2]

The Garbells filed suit against Conejo Hardwoods to recover for their uninsured loss and alleged a single cause of action for negligence.

At the close of evidence, Conejo Hardwoods obtained a directed verdict on the theory that the fire was caused by spontaneous combustion. The jury was instructed not to consider that evidence in reaching its verdict.

The jury returned a special verdict, concluding the workers and the Garbells were both negligent, attributing 55 percent of the fault to Conejo Hardwoods and 45 percent to James Garbell. The jury determined the total amount of damages for loss of personal property was $822,483.45.

The trial court calculated the damages by taking the total personal property loss ($822,483.45), multiplied by the jury's determination that Conejo Hardwoods was 55 percent at fault ($452,365.90). The trial court then subtracted what FIE paid to the Garbells ($424,050), which was at issue in the subrogation action, leaving a net award to the Garbells of $28,315.90.

The judgment stated the Garbells were not entitled to recover costs because the net recovery was less than the Code of Civil Procedure section 998 offer to compromise presented before trial in the amount of $100,000.01. Conejo Hardwoods was awarded costs, including expert witness and consultant fees which were incurred after November 2, 2007, the date the offer to compromise was presented to the Garbells.

This appeal and cross-appeal followed.

## DISCUSSION

1. *The Sufficiency of the Evidence That Conejo Hardwoods Caused the Fire*

Conejo Hardwoods contends there was insufficient evidence that the workers' smoldering cigarette caused the fire. As part of this contention, Conejo Hardwoods appears to argue that expert testimony was required to

---

[2] The record does not disclose the settlement amount, but the parties do not dispute that FIE's subrogation action sought to recover from Conejo Hardwoods for its loss, that is, its insurance payments to the Garbells. Moreover, at trial, the Garbells' attorney repeatedly told the jury the Garbells' action against Conejo Hardwoods was to recover for their uninsured loss.

establish every link in the causation chain, and the Garbells' expert witness did not testify that it was more likely than not that a smoldering cigarette belonging to one of the workers (as opposed to a third party) caused the fire.

■ On the issue of causation, the Garbells had the burden of proof. " 'The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.' [Citation.]" (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205–1206 [114 Cal.Rptr.2d 470, 36 P.3d 11].) The plaintiff, however, "need not prove causation with absolute certainty. Rather, the plaintiff need only ' "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." ' [Citation.]" (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1243 [135 Cal.Rptr.2d 629, 70 P.3d 1046].)

Where findings of fact are challenged on appeal, we are bound by the "elementary, but often overlooked principle of law, that . . . the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. This substantial evidence standard of review applies to the jury's findings on causation. (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 695 [11 Cal.Rptr.3d 807].)

■ Where the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation. (See Evid. Code, § 801, subd. (a); *George v. Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 838–839, 843–844 [205 P.2d 1037] [cause of warehouse fire beyond the common experience].)

In this case, the causation question demanded expert testimony to determine the origin of the fire and to establish the cause of the fire. These were not matters of common knowledge.

There was ample undisputed testimony the origin of the fire was within a garbage can located in the Garbells' garage.

Conejo Hardwoods contends, however, there was insufficient evidence upon which the expert could conclude that a carelessly discarded cigarette

caused the fire. Even if a cigarette had caused the fire, Conejo Hardwoods further contends there is no evidence it was one of the workers' cigarettes. We discuss each in turn.

Olin, the Garbells' causation expert, ruled out by a process of elimination all causes of the fire except two, a smoldering cigarette and spontaneous combustion. After receiving a directed verdict on the spontaneous combustion theory, which was disproved by a defense expert, the jury considered the alternate theory. There was no trace of cigarettes at the scene, as the jury heard, the garbage can was destroyed in the fire.

Conejo Hardwoods argues this evidence does not support a conclusion that a smoldering cigarette was a probable cause of the fire, only a possible cause. Olin, however, relied on additional information obtained during the course of his investigation. Olin testified that he interviewed unidentified workers who told him they were smoking at the jobsite and either threw the Snapple bottle into the trash or dumped the contents (cigarette materials) into the trash. This information led to his causation conclusion. Moreover, Olin based his conclusion upon the absence of other causes. This is sufficient.

██ We recognize that Olin did not testify that the cigarettes belonged to one of the workers, nor could he as there was no trace of cigarettes at the fire's point of origin. Robertson testified the smokers did not smoke in the garage or dispose of the cigarette material directly into the garbage can. Olin, however, had obtained information during the course of his investigation that the workers disposed of their cigarettes directly into the garbage can. But this particular link in the causation chain, that is, whose cigarette caused the fire, did not require expert testimony. The jury drew reasonable inferences based upon timing and proximity. It was reasonable to infer from the evidence that the workers had been working in the garage before the fire, left the jobsite shortly before the fire started, and no one else was at home. While this alone represents the logical fallacy of "post hoc, ergo propter hoc," there was additional evidence from which the jury could draw reasonable inferences. The expert testified no glass shards were found at the point of origin, leading to the inference the workers discarded their cigarettes directly into the garbage can on the day of the fire. The jury was free to disbelieve Robertson that he followed his "routine" on the day of the fire. As Conejo Hardwoods notes, there are other reasonable inferences from this testimony, but when two reasonable but conflicting inferences may be drawn, we must draw the one that supports the judgment.

Conejo Hardwoods counters that it presented evidence at trial showing it did not have exclusive access and control over the garage after the workers left for the day, raising the possibility that a third party's cigarette started the

fire. The jury disbelieved this theory. While we might have reached a different conclusion based upon the evidence, we do not second-guess the jury. We therefore conclude there was sufficient evidence of causation to support the jury's finding of negligence.

### 2. *The Damages Award Was Properly Calculated but Costs Must Be Reconsidered*

The Garbells contend the trial court miscalculated their damages by deducting the insurance payment they received after determining comparative fault for the total personal property loss. The Garbells insist they were entitled to the insurance payment ($424,050) regardless of their fault, and only their uninsured loss ($398,433.45) is subject to comparative fault. Using the Garbells' method of calculation, the net judgment would have been $219,138.39. The Garbells' argument fundamentally misunderstands their insurer's subrogation rights and the judgment.

■ Upon paying the Garbells $424,050 on their insurance policy, FIE became subrogated in that amount and "step[ped] into the shoes" of the Garbells to the extent of the insurance payment. (*Allstate Ins. Co. v. Mel Rapton, Inc.* (2000) 77 Cal.App.4th 901, 908 [92 Cal.Rptr.2d 151]; see also *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.* (2006) 143 Cal.App.4th 1098, 1106 [49 Cal.Rptr.3d 785].) "Subrogation is the 'substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim.' [Citation.]" (*Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.* (2010) 182 Cal.App.4th 23, 31–32 [105 Cal.Rptr.3d 606].) " 'In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid. [Citations.]' [Citation.]" (*Id.* at p. 32.) In other words, subrogation does no more than assign to the insurer the claims of its insured against the legally responsible party.

■ When the insured is only partially compensated by the insurer for a loss, as was the case here, the subrogation doctrine results in two or more parties having a right of action for recovery of damages based upon the underlying negligence. (*Allstate Ins. Co. v. Mel Rapton, Inc., supra,* 77 Cal.App.4th at p. 908; see also *Ferraro v. Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 41 [162 Cal.Rptr. 238], disapproved on other grounds as stated in *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1330, 1336–1337 [104 Cal.Rptr.3d 219, 223 P.3d 77].) FIE had a subrogation right (either as a party joined to this action or in a separate action) to recover its insurance payment of $424,050 from Conejo Hardwoods, and the Garbells had a right to recover for their uninsured loss. In essence, FIE and the Garbells split the right to

recover from Conejo Hardwoods for its negligence. By virtue of the subrogation, the Garbells assigned the right to recover the insured portion of the total damages ($424,050) to FIE.

The jury determined the total damage to the personal property in the Garbells' home was $822,483.45, attributing 55 percent of the fault to Conejo Hardwoods. Conejo Hardwoods was thus liable for $452,365.90 in damages. The Garbells, however, had assigned their right to recover $424,050 of those damages to FIE in the subrogation action. Conejo Hardwoods presumably paid FIE to settle the subrogation action and was not obligated to pay the Garbells any portion of that $424.050.[3] Thus, the trial court correctly deducted that amount and determined Conejo Hardwoods was liable for $28,315.90, in damages to the Garbells.

■ The Garbells argue that Conejo Hardwoods should not be granted a "credit" because they had the foresight to obtain insurance. This is a thinly veiled collateral source rule argument. The subrogation doctrine, however, modifies the collateral source rule. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2010) ¶ 9:37, p. 9-10 (rev. # 1, 2010).) The collateral source rule states that if an injured party receives some compensation for injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages that the plaintiff would otherwise collect from the tortfeasor. (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 9–11 [84 Cal.Rptr. 173, 465 P.2d 61].) The *Helfend* court, however, emphasized that the collateral source rule does not require that a tortfeasor pay double for his or her wrong to both the injured party and to reimburse the collateral source. (*Id.* at p. 11, fn. 15.) Thus, the collateral source rule addresses whether the insured may recover against tortfeasors even though it has been compensated by the insurer; it does not address the insurer's right to recover in a subrogation action for its payments to the insured. (*Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co., supra,* 182 Cal.App.4th at p. 35.) When the "insurance carrier becomes subrogated to the claim of an insured against a third party tortfeasor, the payment of insurance proceeds is no longer a 'collateral source.' " (*Ferraro v. Southern Cal. Gas Co., supra,* 102 Cal.App.3d at p. 47.)

Alternatively, the Garbells concede the $424,050 insurance payment does not figure into their net recovery, but contend the payment should not have been deducted before a determination of their comparative fault. This argument ignores the jury verdict, in which the jury was asked to determine the percentage of fault for the total personal property loss, not the uninsured

[3] We are not concerned with whether FIE recovered the entire $424,050 in its subrogation action. The Garbells had assigned their right to recover to FIE.

loss. Moreover, if the insurance payment had been deducted first, Conejo Hardwoods' liability (to FIE in the subrogation action and to the Garbells) would have exceeded the jury's finding of fault, awarding a potential $643,188.39 in damages ($424,050 + $219,138.39), which is equal to 78 percent of the total personal property loss. There was no error in the damages calculation.

The trial court erred, however, in awarding costs to Conejo Hardwoods. The judgment of $452,365.90 exceeded the Code of Civil Procedure section 998 offer to compromise. Thus, we reverse the portion of the judgment denying costs to the Garbells and awarding costs to Conejo Hardwoods, including expert witness and consultant fees, which were incurred after November 2, 2007, the date the offer to compromise was served on the Garbells.

## DISPOSITION

We reverse the judgment and remand for a modification of the judgment addressing the determination of costs, and for a reconsideration of Conejo Hardwoods' motion for costs. In all other respects, we affirm the judgment. Each party to bear its own costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

A petition for a rehearing was denied May 5, 2011.