Filed 11/19/15 Rathje v. Southern Calif. Edison Co. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| VICKY RATHJE et al.,<br><br>   Plaintiffs and Respondents,<br><br>v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY et al.,<br><br>   Defendants and Appellants. | 2d Civil No. B250166<br>(Super. Ct. Nos. 56-2009-00360200-CU-EI-VTA, 56-2009-00360306-CU-MC-VTA)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered the opinion filed on October 21, 2015, be modified as follows:

On page 15, insert the following paragraphs before the disposition:

The Rathjes point out that SCE appealed the judgment only (which awarded attorney fees in an amount to be determined) but did not separately appeal the trial court's subsequent order setting the amount of fees. They assert that we lack jurisdiction to direct the trial court to reconsider the fee award against SCE. However, SCE did not challenge the amount of the fees awarded or even—in contrast with Time Warner—whether a fee award was appropriate at all. Consequently, we have not considered whether the trial court's fee award against SCE was appropriate.

The Rathjes do not dispute that we have jurisdiction to direct the trial court to reconsider the fee award against Time Warner. In the interest of justice, we may direct the trial court to reconsider the entire fee award. "'As a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties. [Citations.] That general rule has an important exception, however: "[W]here the part [of a judgment] appealed from is so interwoven and connected with the remainder, . . . that the appeal from a part of it . . . involves a consideration of the whole, . . . if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, must have power to do that which justice requires and may extend its reversal as far as may be deemed necessary to accomplish that end." [Citation.]' [Citations.]" (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 371 [reversing attorney fee award against nonappealing party where basis for award was reversed on appeal].) We therefore direct the trial court to reconsider the fee award against both Time Warner and SCE in light of the reduced damages award.

There is no change in the judgment.

Appellants' and respondents' petitions for rehearing are denied.

2

Filed 10/21/15 Rathje v. Southern Calif. Edison Co. CA2/6 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| VICKY RATHJE et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B250166<br>(Super. Ct. Nos. 56-2009-00360200-CU-EI-VTA, 56-2009-00360306-CU-MC-VTA)<br>(Ventura County) |

Respondents Vicky and Jesper Rathje (the Rathjes) grew lavender until one day, during a windstorm, utility lines overhead struck one another, causing electrical arcing that set their field ablaze and destroyed their crop. The Rathjes sued appellants Southern California Edison Company (SCE) and Time Warner NY Cable LLC (Time Warner), claiming that their cables were responsible for the fire. A jury awarded the Rathjes $1,820,000 in damages, and the trial court awarded them $1,636,000 in attorney's fees. Time Warner contends that there is insufficient evidence of its liability and that the fee statute (Code Civ. Proc., § 1021.9) is unconstitutionally vague. Both Time Warner and SCE contend that the damages award improperly includes amounts for speculative and otherwise non-compensable

injuries.  We reverse the $500,000 award for "costs to create" the lavender business and remand for redetermination of attorney's fees.  In all other respects, we affirm.

FACTS AND PROCEDURAL HISTORY

The Rathjes own a 20-acre plot of land on Nightsky Drive in the Santa Rosa Valley, an unincorporated area between Camarillo and Moorpark.  They planted 12,000 lavender bushes on two and a half acres of their land with the intent of starting an organic aromatic products business.

Lavender takes approximately four years to mature and produce its maximum yield.  While the plants were maturing, the Rathjes researched different markets for their lavender and identified the most profitable areas.  They attended lavender festivals and developed a network among growers in Southern California and the Pacific Northwest.  They used the small harvests from the immature lavender to test-market products and develop a reputation as a provider of luxury organic lavender.  They acquired USDA certification as an organic grower and obtained trademarks for their business name and product lines.

By fall 2007 the Rathjes' lavender had reached maturity.  They planned to launch a scent-based promotional products business the following January at a trade show in Las Vegas.

Various electrical transmission lines ran across the Rathjes' property.  Several of SCE's lines, including the Brennan Circuit—a set of 16 kV electrical distribution lines—were supported by a set of wooden poles.  SCE leased space on these poles to Time Warner, which maintained a fiber-optic communications cable attached at a point below the Brennan Circuit.  A kite-shaped wind damper was installed on Time Warner's cable between poles 41 and 43 approximately 95 feet from the middle of the 667-foot span.

On October 21, 2007, at approximately 10:33 a.m., Santa Ana winds blew the energized Brennan Circuit and Time Warner's fiber-optic cable into close proximity around the wind damper.  This contact caused electrical arcing.  As a

result, sparks of molten metal dropped to the ground, igniting dry brush. The consequent fire destroyed the Rathjes' lavender crop.

The Rathjes sued SCE and Time Warner for damages, alleging causes of action against SCE for inverse condemnation and nuisance and against both defendants for violation of Public Utilities Code section 2106, trespass by fire, and negligence.[1] The trial court found SCE liable in inverse condemnation. The jury returned a verdict in favor of the Rathjes on the remainder of their claims. The jury awarded them $210,000 to replace the lavender bushes, $20,000 to replace related equipment and fixtures, $500,000 for lost business profits, $500,000 for the cost to create their lavender business, $90,000 for emotional distress during the fire, and $500,000 for annoyance and discomfort they suffered after the fire.

Time Warner and SCE moved for a new trial and judgment notwithstanding the verdict. The trial court denied their motions and awarded the Rathjes $1,636,000 in attorney's fees—$976,000 against SCE and $660,000 against Time Warner.

DISCUSSION

*Time Warner's Liability*

Time Warner contends that there is insufficient evidence that its fiber-optic cable was the one that interacted with the Brennan Circuit, causing arcing and, ultimately, the fire. The Rathjes had the burden at trial of establishing causation. (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569.) They had to present ""evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly

---

[1] In a separate action, the California Department of Forestry and Fire Protection and the Ventura County Fire Protection District (collectively, the Fire Departments) sued SCE and Time Warner over their role in causing the fire. That case was consolidated with the instant case. The Fire Departments have since settled with appellants and are no longer parties to this appeal.

3

balanced, it becomes the duty of the court to direct a verdict for the defendant." [Citation.]' [Citation.]" (*Ibid.*) The Rathjes were not required, however, to "'prove causation with absolute certainty.'" (*Ibid.*) Rather, they only had to "'"introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.'" [Citations.]' [Citation.]" (*Ibid.*) Because "the complexity of the causation issue is beyond common experience, expert testimony [was] required[.]" (*Ibid.*)

We review the jury's causation finding for substantial evidence. (*Garbell v. Conejo Hardwoods, Inc.*, *supra*, 193 Cal.App.4th at p. 1569) We "view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." (*Ibid.*)

Considerable evidence supported the jury's finding that Time Warner's cable was a cause of the fire. Multiple witnesses observed an electrical arcing event around 10:30 a.m.—coinciding with service interruptions on the Brennan Circuit at 10:31 a.m. and 10:33 a.m.—followed immediately by the fire. Twice, about two minutes apart, the Rathjes' son Lars saw an orb of hot air accompanied by a "huge snap" sound. Neighbor Robert Olson heard a "loud electrical jolt" around 10:30 a.m. and saw the fire start immediately afterwards. Around the same time, another neighbor, Anita Carton, heard "a very large bang like from the fireworks" and then saw "a big huge cloud of smoke."

Olson saw the fire start 20 feet west of Time Warner's wind damper. Christine Saqui, the Fire Departments' "cause and origin" expert who examined the area on the day of the fire, similarly concluded that the fire began approximately 15 feet south to southwest of the damper. Because the wind was blowing from the northeast to the southwest, molten material falling from near the damper would have hit the ground southwest of it. Lars Rathje saw the fire ignite just to the east of the span's mid-point, which was consistent with the Rathjes' theory but inconsistent with Time Warner's theory that the fire was caused by arcing at the mid-point.

4

Damage from electrical arcing was found on both Time Warner's line and the Brennan Circuit in the area of the wind damper and extending about 15 feet to the west. The arc marks on SCE's line matched the pattern on Time Warner's fiber-optic cable from the steel lashing wire that wrapped around it at regular intervals. The marks were up to 25 millimeters across. Particles of molten metal as small as one millimeter can drop to the ground and ignite combustible material. Moreover, the marks appeared "fresh" in Saqui's photos from the day of the fire, meaning they were surrounded by black carbon rings that can be seen "within a day or two of the event." Time Warner's lashing wire on the span at issue was damaged from heat of at least 2,700 degrees Fahrenheit and splattered with aluminum, indicating arcing damage from SCE's aluminum conductor.[2] Several experts— including not only the Rathjes' expert, Mark Felling, but also the Fire Departments' engineer, Mark Rhodes, and SCE's engineer, Phillip Wheeler—examined this evidence and concluded that Time Warner's cable caused the fire.

The crux of Time Warner's argument is that Felling ignored Saqui's observations of damage to other places along the Brennan Circuit, particularly mid-span, her conclusion that Time Warner's cable was only a "possible" cause of the fire, and Lars Rathje's eyewitness account that the fire started from the "middle of the two poles" at issue. It was unlikely that a midspan arcing event caused the fire given that the wind would have blown falling molten material away from the fire's observed source. Similarly, arcing on the circuits on the steel poles, evidence of which was disputed, would not likely have led to the fire given the wind direction.

---

[2] Time Warner presented conflicting evidence. Its employee Raul Lopez testified that the only lashing wire to have unraveled, which he removed, was near the wind damper between poles 39 and 41. However, Vicky Rathje, who watched the removal operation, testified it involved the span between poles 41 and 43. Time Warner's expert Dr. Robert Armstrong inspected the site and found the only broken lashing wire between poles 41 and 43. Given the conflict in the evidence, we must assume the jury resolved it in the Rathjes' favor. (See, e.g., *Pedeferri v. Seidner Enterprises* (2013) 216 Cal.App.4th 359, 372.)

Felling did not ignore evidence. He made the reasonable decision not to investigate unlikely sources of the fire. That did not render his opinion unreliable.

Time Warner admits that Saqui "did not think it was important to determine 'which objects came into contact with each other specifically.'" It is thus unsurprising that when she observed damage to the Brennan Circuit in multiple locations, she merely labeled Time Warner's cable as one "possible" cause and did not attempt to rule out others.

Regarding Time Warner's semantic argument about the meaning of the word "middle," Lars Rathje testified that he observed the second orb of electrical arcing within a certain "region" of the span, "just to the east" of the span midpoint. He later explained that when he stated that "it was somewhere in the middle of the span," he did not mean that it was "precisely in the middle." Rather, he meant he saw the electrical arcing closer to the middle of the span than to the poles. That is consistent with the arcing occurring around Time Warner's wind damper, which was located 95 feet from the mid-point of the 667-foot span and 240 feet from the nearest pole. Felling did not reject Lars Rathje's testimony; rather, he interpreted it in a reasonable way.

Time Warner also contends that there is insufficient evidence it violated Public Utilities Commission General Order 95 (GO 95), which imposes minimum vertical clearance requirements between utility cables. Even if it is correct, however, there would be no prejudice from the error. The alleged violation of GO 95 was an alternative theory of liability. The jury also found that Time Warner was liable under a negligence theory. Time Warner's compliance with GO 95 does not disturb the negligence finding, particularly given the substantial evidence that its fiber-optic cable came into contact with the Brennan Circuit. (See *Nevis v. Pacific Gas & Elec. Co.* (1954) 43 Cal.2d 626, 630 ["Compliance with the general orders of the Public Utilities Commission does not establish as a matter of law due care by the power company, but merely relieves it 'of the charge of

6

negligence *per se*. It does not affect the question of negligence due to the acts or omissions of the company as related to the particular circumstances of the case'"].)

*Damages-Related Issues*

Both Time Warner and SCE contend that the trial court improperly permitted a damages award of $500,000 for lost business profits, $500,000 for costs to create the lavender business, and $500,000 for post-fire "annoyance and discomfort." The Rathjes' entitlement to each of these categories of damages is a question of law, which we review de novo. (*Bermudez v. Ciolek* (2015) 237 Cal.App.4th 1311, 1324.) The amount of damages awarded is a factual determination that we will not disturb if it is supported by substantial evidence. (*Ibid.*)

*Lost Business Profits*

"Lost profits may be recoverable as damages . . . . '[T]he general principle [is] that damages for the loss of prospective profits are recoverable where the evidence makes reasonably certain their occurrence and extent.' [Citation.] Such damages must 'be proven to be certain both as to their occurrence and their extent, albeit not with "mathematical precision."' [Citation.] The rule that lost profits must be reasonably certain is a specific application of a more general statutory rule. 'No damages can be recovered . . . which are not clearly ascertainable in both their nature and origin.' (Civ. Code, § 3301 . . . .)" (*Sargon Enterprises, Inc. v. University of Southern Cal.* (2012) 55 Cal.4th 747, 773-774 (*Sargon*).)[3]

"'[W]here the operation of an unestablished business is prevented or interrupted, damages for prospective profits that might otherwise have been made from its operation are not recoverable for the reason that their occurrence is

---

[3] *Sargon* involved damages for breach of contract. "Nonetheless, the principle of recovering lost profits for loss of a business applies equally well to tort actions. [Citation.]" (*Electronic Funds Solutions v. Murphy* (2005) 134 Cal.App.4th 1161, 1180 fn. 13.)

uncertain, contingent and speculative . . . . But although generally objectionable for the reason that their estimation is conjectural and speculative, anticipated profits dependent upon future events are allowed where their nature and occurrence can be shown by evidence of reasonable reliability.' [Citation.]" (*Sargon*, *supra*, 55 Cal.4th at p. 774.)

"'Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. [Citations.] The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even [if] the result reached is an approximation. [Citation.] This is especially true where . . . it is the wrongful acts of the defendant that have created the difficulty in proving the amount of loss of profits [citation] or where it is the wrongful acts of the defendant that have caused the other party to not realize a profit to which that party is entitled.' [Citation.]" (*Sargon*, *supra*, 55 Cal.4th at pp. 774-775.)

We agree with appellants that a lost profits award for the Rathjes' unestablished scent-based promotional products business cannot survive scrutiny under *Sargon*. Like the expert in that case, the Rathjes' experts had no experience in scent-based promotional products. And their opinions that the Rathjes could launch a successful business in a newly developing market solely because they were skilled businesspeople with a good business plan and a great product were similarly unfounded. The closest the Rathjes came to providing comparative data from similar businesses was anecdotal: Nancy Phillips, the executive director of a local trade association, had read about one scent-based promotional products business that had sales in the "low six digit[s]" after the first year, "over a million" the next year, and doubled each year thereafter. However, without more concrete information about this business—we do not even know if it was profitable—we cannot make any meaningful comparisons between it and the Rathjes' planned business as a benchmark for their own likely profits. (See *Parlour Enterprises, Inc. v. Kirin Group, Inc.* (2007) 152 Cal.App.4th 281, 290 ["Although one way to prove

8

prospective profits is through the experience of comparable businesses, [the expert's] cursory description of [the other] business model failed to establish its profit-and loss experience is sufficiently similar to [plaintiffs' business] to be relevant to the question of plaintiffs' alleged lost profits"].)

That does not end our analysis, however. The fact remains that the Rathjes lost fully mature lavender bushes that would have produced a predictable quantity of certified organic lavender for approximately 14 years. Even if they had failed to land any orders for scent-based promotional products, they still would have had a crop that could have been sold as a commodity at the market price, which *was* ascertainable with reasonable certainty. The Rathjes' expert Dr. David Smith projected that the Rathjes would have earned profits in excess of $500,000 just by selling their organic lavender as a commodity on the wholesale market.

Appellants argue that Dr. Smith's projections were based on unrealistic assumptions. First, they attack his assumption that the Rathjes would sell 10,000 pounds of lavender when the most their crop could yield was 4,500 pounds. In fact, the assumption was that their crop yielded 4,500 pounds *per acre*, and the Rathjes were cultivating lavender on roughly two and a half acres with the potential to expand up to eight or nine acres. Thus, a yield of 10,000 pounds was not an unrealistic assumption. Second, appellants argue that there was a glut of lavender and the Rathjes could have bought lavender on the open market for $10 per pound, less than their cost of growing it. Again, that was not Dr. Smith's assumption. According to Dr. Smith's market research, the Rathjes' organic lavender would have commanded a price of $18 to $25 per pound. He based his lost profits calculation on the low end of that range. We must resolve the factual dispute over the price of lavender on the commodity market in the Rathjes' favor.

Although the estimates of the Rathjes' scent-based promotional products business were speculative and thus improper as a basis for damages, there was sufficient evidence to support the award for lost business profits based on the Rathjes' ability to sell their lavender as a commodity.

9

*Costs to Recreate the Lavender Business*

Appellants contend that, for multiple reasons, the Rathjes' $500,000 award for "costs to create" their lavender business anew cannot stand. We need only address one of these arguments, with which we agree, that the award constitutes an impermissible double recovery.

The Rathjes assert that they should recover damages for profits they would have made if the fire had not occurred. In addition, they argue for recovery of the costs to recreate their business given that the fire did occur. In other words, they claim entitlement to compensation for the fire both occurring and not occurring. Schrödinger's cat would recognize this logic,[4] but courts of law do not.

"The measure of damages in California for tortious injury to property is 'the amount which will compensate for all the detriment proximately caused thereby . . . .' (Civ. Code, § 3333.)" (*Heninger v. Dunn* (1980) 101 Cal.App.3d 858, 861.) "'"There is no fixed, inflexible rule . . . ; whatever formula is most appropriate to compensate the injured party for the loss sustained in the particular case, will be adopted."' [Citations.]" (*Rony v. Costa* (2012) 210 Cal.App.4th 746, 754.)

Here, the Rathjes' damages could be calculated in at least two ways. One is simply to calculate the profits they would have earned had there been no fire—in other words, their lost business profits over the lifetime of the lavender bushes discounted to present value. (*Sargon*, *supra*, 55 Cal.4th at p. 774.) For that, they recovered $500,000, as discussed above.

Alternatively, the Rathjes' compensation might have been calculated as the costs to recreate their business. (*Heninger v. Dunn*, *supra*, 101 Cal.App.3d at p. 862 ["One alternative measure of damages is the cost of restoring the property to its condition prior to the injury"].) Although this measure fails to compensate them for the three years of lost profits while they grew new lavender bushes, it also puts

---

[4] See *What is Schrodinger's cat?* <http://whatis.techtarget.com/definition/ Schrodingers-cat> as of Oct. 14, 2015.

them in a better position than they otherwise would have been in because the replacement lavender bushes would last three years longer than the bushes that burned in the fire, during which time the Rathjes would continue to reap profits. Using this measure of damages, the "lost" business profits are not actually lost. But it is only an *alternative* means of calculating the Rathjes' damages. When combined with the lost business profits already awarded, it compensates them twice for the same injury. Therefore, we reverse the award of $500,000 for costs to create.

*Damages for Post-Fire "Annoyance and Discomfort"*

The jury awarded the Rathjes $500,000 for post-fire annoyance and discomfort from the continuing risk of fire caused by the proximity of the Brennan Circuit and Time Warner's fiber-optic cable. Appellants contend that these damages are unsupportable factually and legally. In addition, Time Warner contends that the award against it is procedurally improper because it lacked notice that the Rathjes intended to pursue post-fire damages. We reject each of these contentions.

SCE asserts that the Rathjes' fear of future fires was "purely speculative, not supported by any scientific evidence." To the contrary, the proximity of appellants' lines had already caused arcing and sparks several times, one of which caused a previous fire. After the fire at issue here, the Rathjes continued to observe the lines blowing close together, once about a foot apart, during Santa Ana winds. Appellants waited months before making any changes. Felling, the Rathjes' expert, testified at trial that even then the lines remained at an unsafe distance from one another and there was a "very high probability" they would clash. The lines' history of causing sparks and fires combined with appellants' ongoing failure to adequately separate them supports the Rathjes' concerns about another fire.

To the extent appellants argue that "fear alone is not a compensable injury," we disagree. "Once a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue therefrom. [Citations.]" (*Herzog v. Grosso* (1953) 41 Cal.2d 219,

11

225.) Such damages include compensation for mental anguish. (*Armitage v. Decker* (1990) 218 Cal.App.3d 887, 898, 905 [allowing trespass damages for owner suffering "distress due to the spillage of dirt onto [the] property and the threat of interference with drainage on [the] property, as well as concern over . . . operation of [a] bulldozer" that "upset and frightened" his eight-year-old daughter].) "Among the bodily and mental harms which are compensable [to persons living on the property] must be included continual fear of danger in case of repetition . . . . [Citation.]" (*Alonso v. Hills* (1950) 95 Cal.App.2d 778, 788.)

This case is analogous to *Alonso v. Hills*, where the defendants' activity on their own property caused a three-pound rock rather than sparks of molten metal to shower down on the plaintiff's property. (*Alonso v. Hills*, *supra*, 95 Cal.App.2d at p. 789.) Instead of starting a fire that threatened the lives of the people living on the property, the rock destroyed a bench near where the plaintiff's daughter was standing. (*Id.*, at p. 788.) The court held that the plaintiff's "fear for his own security and that of his family" was "a form of discomfort for which [he was] entitled to recover." (*Ibid.*)

SCE cites authority that "a private nuisance action cannot be maintained for an interference in the use and enjoyment of land caused solely by the fear of a future injury." (*Koll-Irvine Center Property Owners Assn. v. County of Orange* (1994) 24 Cal.App.4th 1036, 1041-1042 (*Koll-Irvine*); see *Helix Land Co. v. City of San Diego* (1978) 82 Cal.App.3d 932, 950 [holding that private plaintiff "may not recover damages for potential, future injuries arising from the threat of [public] nuisance" without alleging "facts showing *Special* injury to himself in person or property, and of a character different in kind from that suffered by the general public"].) These cases, however, are inapposite. As *Koll-Irvine* acknowledges, "[d]amages for emotional distress can be recovered in an action for private nuisance" so long as "the emotional distress [was] *caused* by an interference with a specific property right[.]" (*Koll-Irvine*, at p. 1042 fn. 3; cf. *Crisci v. Security Ins. Co. of New Haven, Conn.* (1967) 66 Cal.2d 425, 434 ["[W]here, as here, the

12

claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced"].)

Time Warner contends that the Rathjes "did not sufficiently plead any facts that would have put [it] on notice that [they were] seeking nuisance-type damages against [it]." The record shows otherwise. The Rathjes alleged in their operative pleading that they were "harmed by . . . the continuing threat of fire" and that both Time Warner and SCE "have consciously and recklessly disregarded the fact that the utility lines in question have been excessively sagging and have been maintained in the same manner as they existed at the time of the . . . [f]ire." In their prayer for relief, the Rathjes sought compensatory damages for all causes of action that included their "emotional distress, discomfort, and annoyance." Time Warner had adequate notice about the damages it faced.

### Constitutionality of Fee Statute

The fee-shifting statute utilized by the Rathjes provides that "[i]n any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees[.]" (Code Civ. Proc., § 1021.9.) Time Warner contends that this statute is unconstitutionally vague both on its face and as applied here. Whether a statute is unconstitutionally vague is a question of law we review de novo. (*People v. Martinez* (2014) 226 Cal.App.4th 759, 765.)

"[T]he void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." (*F.C.C. v. Fox Television Stations, Inc.* (2012) 132 S.Ct. 2307, 2317 [183 L.Ed.2d 234, 236].) Where, as here, the statute at issue does not involve First Amendment rights and implicates solely economic concerns, the enactment must be "vague '"not in the sense that it requires a person to conform his conduct to an

13

imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." [Citation.]'" (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982) 455 U.S. 489, 495, fn. 7.)

As evidence of such ambiguity, Time Warner points to two Court of Appeal cases that purportedly reached differing conclusions about the statute's applicability under similar facts. (Compare *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1375 [holding it "does not encompass the urban backyard garden"] with *Haworth v. Lira* (1991) 232 Cal.App.3d 1362, 1371 [holding it "was not limited to ranchers or other commercial farmers"].) But the question in *Haworth*, "whether or not the statute applied to the noncommercial raising of livestock," differed from the question in *Quarterman*, which was "whether the Legislature intended the term 'lands . . . under cultivation or intended or used for the raising of livestock' to include a small urban backyard which contains a garden." (*Quarterman*, at p. 1371.) More importantly, "division about whether the [statute] covers this or that [conduct]" is not "telling" because "even clear laws produce close cases[.]" (*Johnson v. United States* (2015) __ U.S. __ [135 S.Ct. 2551, 2560; 192 L.Ed.2d 560, 581].)

Whatever the scope of disagreement between these two cases, there is no ambiguity that the statute applies to rural property used for commercial ranching and farming. (See *Starrh and Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583, 606 ["We begin . . . with the obvious. [The] property is indisputably 'land under cultivation.' It is rural and has been commercially farmed for decades"].) As such, Time Warner's facial challenge fails. Similarly, the Rathjes' commercial lavender operation on rural property falls within the category of "lands . . . under cultivation," thus defeating Time Warner's as-applied challenge.

Because "[t]he trial court must consider various factors, including the 'success or failure' of the plaintiff's action in deciding the amount of attorney fees," we will remand so that it can redetermine the amount of fees to which the Rathjes are entitled. (*Lemaire v. Covenant Care California, LLC* (2015) 234 Cal.App.4th

14

860, 868.)  We express no opinion what, if any, reduction in the fee award is appropriate.

DISPOSITION

The judgment is reversed as to the $500,000 award for costs to create the lavender business.  The attorney fee award is vacated and remanded for redetermination by the trial court.  In all other respects, the judgment is affirmed.  Costs on appeal are awarded to the Rathjes.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

15

Frederick H. Bysshe, Jr., Judge

Superior Court County of Ventura

_____


Patricia A. Cirucci, Brian A. Cardoza, Greines, Martin, Stein & Richland LLP, Timothy T. Coates, Carolyn Oill for Defendant and Appellant Southern California Edison Company.

Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Steven J. Joffee, Ashley R. Morris, Robert Cooper for Defendant and Appellant Time Warner NY Cable, LLC.

Taketa | Villaseñor LLP, Donn S. Taketa, Joel R. Villaseñor, George Pelham Albutt for Plaintiffs and Respondents.