Filed 2/17/22  Alvarado v. Wilson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ERNESTO P. ALVARADO,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEAN WILSON,<br><br>Defendant and Respondent. | B303361<br><br>(Los Angeles County Super. Ct. No. BC663434) |

APPEAL from an order of the Superior Court of Los Angeles County, Lia R. Martin, Judge.  Affirmed in part, reversed in part, and remanded.

James S. Link; Peter K. Levine; Eugene D. Locken for Plaintiff and Appellant.

Horvitz & Levy, H. Thomas Watson and Mark A. Kressel; Dummit Buchholz & Trapp, Harmon B. Levine and Craig S. Dummit, for Defendant and Respondent.

Plaintiff and appellant Ernesto Alvarado (Alvarado) appeals from a summary judgment granted in favor of defendant and respondent Dean Wilson (Wilson), a physician assistant who treated Alvarado while hospitalized. The key issue we are asked to decide is whether the trial court erred in sustaining an objection to a portion of an expert declaration opining that the malpractice of various personnel who treated Alvarado while in the hospital caused his vision loss. We also consider whether there is a dispute of material fact requiring trial on Alvarado's separate claim for medical battery.

## I. BACKGROUND

### A. *Undisputed Facts*[1]

In late February 2016, Alvarado twice went to a hospital emergency room complaining of a headache, stiff neck, and hearing loss related to a shunt catheter and shunt tube that had been placed in his head more than ten years before.[2] Alvarado improved and was discharged both times. Just a couple days later, however, Alvarado again sought emergency care for similar symptoms—this time at West Hills Hospital—and doctors admitted him for further treatment.

On March 1, 2016, while still hospitalized, Alvarado was seen by Dr. Leon Barkodar, a neurologist. He recommended neurosurgery personnel check Alvarado's cerebrospinal fluid at

---

[1]    Consistent with governing law, our summary of the facts is stated in the light most favorable to Alvarado. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

[2]    Years earlier, Alvarado was diagnosed with pseudotumor cerebri, a condition that causes increased pressure inside the head—pressure that, if untreated, can cause vision loss.

2

the shunt and undertake a lumbar puncture to evaluate Alvarado for possible viral meningitis.  Alvarado was then seen by Wilson, who asked Alvarado's mother to bring him old imaging and chart notes so he could review them.  After obtaining Alvarado's written consent, Wilson attempted a procedure that would "tap" one of Alvarado's shunts, but he was unable to extract cerebrospinal fluid.  As a result, he recommended a lumbar puncture be performed.  The lumbar puncture was performed later that day by Dr. Bruce Shragg, an interventional radiologist.

Alvarado remained in the hospital for a few days.  Dr. Barkodar eventually determined Alvarado was ready for discharge from a neurological standpoint.  The next day, Alvarado was seen by another doctor who noted Alvarado was feeling better and his neck was at full range of motion and not tender.  Alvarado was ultimately discharged from the hospital on March 7, 2016.

After another emergency room visit and a doctor's visit, Alvarado went to the emergency room at Kaiser Woodland Hills in mid-March 2016.  A CT scan was taken with no acute findings, and Alvarado was discharged.  He returned to the emergency room at West Hills Hospital two days later, due in part to a possible seizure he suffered the day before.  He was discharged that afternoon.  He returned to the same emergency room just under a week later, and he was counseled on lifestyle changes and again discharged.

Alvarado thereafter attended appointments with Dr. Barkodar in April and May.  During the April appointment, Alvarado's lumbar puncture pressure was reported to be low/normal.  During the latter appointment, Dr. Barkodar recommended an ophthalmology referral for blurry vision.

Alvarado saw ophthalmologist Dr. Andrew Chang on June 1, 2016, complaining of blurred vision and double vision. Dr. Chang's assessment included optic neuropathy and papilledema secondary to meningitis. Alvarado was instructed to follow-up in three weeks.

Two days later, Alvarado went to the UCLA Medical Center emergency room complaining of headache and malaise. Testing showed Alvarado had high cerebrospinal fluid pressure and diminished vision. CT scans taken that day and the following day appeared to show a broken cranial shunt. Alvarado then underwent a procedure in which a new ventriculoperitoneal shunt was placed on the left side of his skull to decompress the ventricles. The following day, Alvarado was diagnosed with a massive papilledema in both eyes (papilledema is increased pressure in or around the brain which causes the part of the optic nerve inside the eye to swell). Alvarado now asserts he is permanently blind as a result of the ongoing effects of elevated cerebrospinal fluid pressure on his optic nerves.

### B.    Alvarado's Lawsuit

After losing his vision, Alvarado sued various medical providers that were involved in his care: Wilson, Dr. Barkodar, Dr. Veena Sengupta, Dr. Shragg, West Hills Hospital, West Hills Hospital and Medical Center, and Dr. Chang.

The operative first amended complaint, filed in October 2017, alleges: a first cause of action for medical malpractice against both hospital defendants, Wilson, and Drs. Barkodar, Sengupta, and Shragg;[3] a second cause of action for lack of

---

[3]    A separate cause of action for medical malpractice was also alleged against Dr. Chang.

4

informed consent against Wilson and the two West Hills entities; a third cause of action for medical battery against Wilson, Dr. Barkodar, and the hospital defendants; and a fourth cause of action for corporate negligence against the West Hills entities only.[4]

> ### C. *Wilson's Motion for Summary Judgment or Summary Adjudication in the Alternative*

Wilson moved for summary judgment, or in the alternative, summary adjudication (for simplicity, the "summary judgment motion"). As relevant here, Wilson contended the cause of action for medical negligence failed to raise triable issues of material fact both because Wilson complied with the applicable standard of care and because none of his actions caused or contributed to Alvarado's injury. He also argued the causes of action for medical battery and lack of informed consent failed to raise triable issues of material fact because no acts or omissions caused Alvarado's injury. In support of these arguments, Wilson submitted the expert declaration of Dr. John Frazee, a neurosurgeon.

In his declaration, Dr. Frazee explained his understanding of the relevant facts, including Alvarado's interactions with Wilson. Dr. Frazee noted Wilson examined Alvarado, attempted to tap Alvarado's shunt, and, after three unsuccessful attempts to extract fluid, recommended a lumbar puncture. Wilson also noted his impression that Alvarado was clinically stable of viral

---

[4] The record also reflects Alvarado filed a separate case against Wilson alleging fraud. That case is unimportant for our purposes.

meningitis, and that his fluid pressure was low/within normal limits.

Dr. Frazee opined, "to a reasonable degree of medical probability, no acts or omissions to act by [Wilson] or any of the physicians and non-physician personnel who cared for [Alvarado] during the February-March 2016 admissions caused or contributed in any way to [Alvarado's alleged injuries]." More specifically, Dr. Frazee noted there was no evidence of papilledema during Alvarado's West Hills admission. Regarding Alvarado's shunt, Dr. Frazee opined Wilson's attempt to tap the cranial shunt and any damage possibly caused by that attempt had no relationship to Alvarado's ultimate diagnosis and "could not have caused or contributed in any way to [Alvarado's] alleged injuries." He also noted CT scans taken before and after Wilson treated Alvarado did not show any change to the shunt.

Alvarado opposed the motion for summary judgment and argued Wilson did not comply with the standard of care in attempting to tap Alvarado's shunt—by failing to first review Alvarado's prior medical records, by not requesting his supervising physician to assess the shunt, and most importantly for our purposes, by not examining Alvarado's eyes for papilledema. He argued these failures were a substantial factor in causing the harm he suffered.

Among the evidence Alvarado submitted in opposition were excerpts from his deposition and his own declaration. Alvarado testified at deposition that he began noticing blurry vision while at West Hills Hospital in March 2016 and he was suffering from headaches, blurred vision, and whooshing sounds in his ears at the end of March 2016. In his declaration, Alvarado asserted that when Wilson "performed the 4-5 attempts to tap my head

6

shunt without my consent, it caused severe physical pain, severe mental suffering, emotional distress, feelings of humiliation and anxiety." He further stated, "The physical pain resolved within several weeks, however, I continue to have severe mental suffering, emotional distress, and feeling of humiliation and anxiety to this day."

Alvarado also submitted two expert declarations with his opposition. The most important of these for this appeal is the declaration of Dr. Benjamin Frishberg, a neuro-ophthalmologist who declared he was familiar with the standard of care in the medical profession for physicians who care for patients with neuro-ophthalmologic problems. Dr. Frishberg summarized the facts he gleaned from his review of records, including various aspects of Alvarado's hospital stay.

Based on the symptoms Alvarado described during his deposition (namely, severe headaches worsening when lying on his back, blurred vision, double vision, and "whooshing sounds in his head"), Dr. Frishberg opined to a reasonable degree of medical probability that Alvarado suffered from increased intracranial pressure and papilledema from March 1, 2016, up to and after June 1, 2016. (He specifically noted Dr. Shragg did not use a manometer to measure Alvarado's intracranial pressure on March 1, 2016, and that without such use Dr. Shragg "simply guessed that the pressure was low and not elevated.") Dr. Frishberg additionally emphasized that during Alvarado's stay at West Hills Hospital, "no healthcare provider specifically documented the condition of [his] optic nerves."

Dr. Frishberg declared that based on his background, training, and experience, he was "qualified to render expert opinions regarding any violations of the standard of care by any

7

of the healthcare providers who care for patients with neuro-ophthalmologic problems practicing[ ] in this matter and what harm, if any, the violations of the standard of care caused to [Alvarado]." We shall quote in full Dr. Frishberg's elaboration of his causation opinion: "To a reasonable degree of medical probability the acts or omissions to act by the physicians and non-physician personnel who cared for [Alvarado] during the February-March 2016 admissions caused or contributed to [Alvarado's] alleged injuries in the following ways:[5] [¶] a. The opening pressures reported on March 2, 2016, in Dr. Barkodar's and Dean Wilson's progress notes, as low or low/normal opening pressure are meaningless because Dr. Shragg admitted in his deposition he chose not to use a manometer to measure the opening pressure, but he simply guessed that the opening pressure was not high but low or low/normal. To a reasonable degree of medical probability, [Alvarado] had increased [intra-cranial pressure] and papilledema beginning on February 28, 2016, that continued, and progressively[ ] worsened[,] until June 1, 2016. [¶] b. A proper ophthalmologic eye exam to detect the papilledema was never performed on [Alvarado] by any healthcare provider during the hospitalization. [Sic] Thereby failing to detect the papilledema that in all medical probability

---

[5]     The trial court would later sustain an "overbroad" objection made by Wilson to this preface (i.e., the portion that states the acts and omissions of "physicians and non-physician personnel who cared for [Alvarado] during the February-March 2016 admissions caused or contributed to [Alvarado's] alleged injuries in the following ways"). As we later explain, that was error and we shall consider the preface in our analysis—even though it is not necessary to the conclusion we reach.

was present.  [¶]  c.  A proper opening pressure was never performed and recorded on [Alvarado] by Dr. Shragg, thereby failing to detect the increased intra-cranial pressure that in all medical probability was present.  [¶]  d.  The failure to detect the papilledema and increased intra-cranial pressure that was in all medical probability present during the February-March 2016 hospitalization allowed the increased intra-cranial pressure and papilledema to continue to progressively worsen and was in all medical probability a substantial factor in causing [Alvarado's] loss of vision."[6]

Along with Dr. Frishberg's declaration, Alvarado submitted a declaration from Joseph Hlavin (Hlavin), a physician assistant. Hlavin recited various facts gleaned from the record and then opined, in pertinent part, that Wilson violated the standard of care of a reasonably careful physician assistant by not examining Alvarado's eyes for papilledema and by not requesting his supervising physician to come to the hospital to assess the shunt.

In reply, Wilson objected to numerous statements made in the declarations of Dr. Frishberg and Hlavin.  Among those was this statement in Dr. Frishberg's declaration concerning causation: "The failure to detect the papilledema and increased intra-cranial pressure that was in all medical probability present during the February-March 2016 hospitalization allowed the increased intra-cranial pressure and papilledema to continue to

---

[6]      Dr. Frishberg's declaration does not make specific reference to Wilson by name other than as quoted in this excerpt. The declaration does refer to "non-physician personnel" and "healthcare provider[s]" who cared for Alvarado, however, and Wilson is the only named defendant who is not a physician (or an entity).

progressively worsen and was in all medical probability a substantial factor in causing Ernesto Alvarado's loss of vision." Wilson's objection to this statement, designated as objection number 11, was phrased: "Vague and ambiguous as to whether this opinion is meant to apply to Defendant, [Wilson]; also a conclusion. If it is directed to [Wilson], there is a lack of foundation that this witness has the background, training and experience to give an opinion as to the standard of care by a physician assistant."[7]

### D.     The Trial Court's Summary Judgment Ruling

The trial court held a hearing on Wilson's motion for summary judgment (and other matters pertaining to the other defendants). The transcript of the hearing indicates the court's tentative ruling was to grant summary adjudication as to the lawsuit's causes of action for lack of informed consent and fraud while denying summary adjudication as to the causes of action

---

[7]     Wilson also objected to both of Dr. Frishberg's statements regarding his familiarity with the applicable standards of care. First, he objected to Dr. Frishberg's assertion that he was "readily familiar with the standard of care applicable to the treating physicians, physicians assistants[,] hospital staff and other medicine practitioners involved in" Alvarado's treatment. Second, he objected to Dr. Frishberg's assertion that he was "qualified to render opinions regarding any violations of the standard of care by any of the healthcare providers who care for patients with neuro-ophthalmologic problems practicing, in this matter and what harm, if any, the violations of the standard of care caused to [Alvarado]." Wilson's objections to both statements were made on the grounds that the statements were conclusory and that Dr. Frishberg lacked foundation regarding the standard of care for a physician's assistant.

for medical malpractice and medical battery. Counsel argued only about the claims for which the tentative indicated summary adjudication would be granted (i.e., not the medical malpractice and medical battery claims). The court took the matter under submission.

In contrast to its tentative ruling, the trial court's final order granted Wilson's motion for summary judgment in full (i.e., resolving the medical malpractice and medical battery claims in Wilson's favor as well). Turning first to the parties' evidentiary objections, it sustained several of Wilson's objections (while overruling all of Alvarado's). The one that matters for our purposes is the ruling on objection number 11 to the causation opinion expressed by Dr. Frishberg. On that objection, the court's ruling states, "sustained as to defendant Wilson only."

Proceeding to the merits of the motion, the trial court concluded Alvarado had not raised a triable issue of material fact on any of his causes of action. As to Alvarado's medical negligence and medical battery causes of action against Wilson, the court found there was "no triable issue of material fact with respect to whether any act or omission by defendant [Wilson] contributed to [Alvarado's] injuries."

Alvarado subsequently filed a motion for new trial arguing the trial court erred in sustaining Wilson's objections to Dr. Frishberg's declaration, and further contending that, had the statements not been stricken, he would have raised a triable issue of material fact as to all four of his causes of action. The trial court denied the motion and entered judgment for Wilson.

11

## II.  DISCUSSION

The trial court did not err in finding there were no triable issues of material fact as to Alvarado's claim for medical battery. Wilson's expert opined the alleged battery (the repeated, unsuccessful attempts by Wilson to tap Alvarado's shunt) did not cause Alvarado's vision loss (or any other injury) and Alvarado presented no expert testimony to the contrary.

The same cannot be said, however, for the trial court's disposition of the medical malpractice cause of action asserted against Wilson.  The trial court abused its discretion by sustaining objection 11 to Dr. Frishberg's declaration.  Though Dr. Frishberg's declaration is not a paragon of specificity, it is adequate to establish a dispute of fact on the issue of causation: it establishes Dr. Frishberg reviewed the relevant evidence, was familiar with Wilson's treatment of Alvarado, and expressed a causation opinion encompassing Wilson's asserted violation of the standard of care.  Because Wilson concedes Alvarado did raise a triable issue of fact as to whether there was a violation of the standard of care, trial is required to resolve Alvarado's claim for medical malpractice.

### A.     *Background Law*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  The defendant bears the initial burden of showing that the plaintiff cannot establish one or more elements of each cause of action, or that there is an affirmative defense to it.  (Code Civ. Proc. § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th

12

826, 850 (*Aguilar*).) If the defendant makes one of the required showings, the burden shifts to the plaintiff to establish a triable issue of material fact. (Code Civ. Proc. § 437c, subd. (p)(2); *Aguilar*, *supra*, at 850.) To defeat summary judgment, the plaintiff must "'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

"When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761-762.) "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Id.* at 761.) "The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed. [Citation.] This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration. Only *admissible evidence* is liberally construed in deciding whether there is a triable issue." (*Ibid.*)

"We review [a] trial court's ruling on the admissibility of expert testimony for abuse of discretion." (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154.)

*B.     The Medical Battery Cause of Action*

To state a cause of action for medical battery, a plaintiff must allege: (1) a defendant performed a medical procedure without the plaintiff's consent, or the plaintiff consented to one medical procedure but the defendant performed a substantially different medical procedure; (2) the plaintiff was harmed; and (3) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  (CACI No. 530A.)

Wilson's motion argued his actions had not caused or contributed to the alleged harm to Alvarado and relied on Dr. Frazee's declaration.  Dr. Frazee opined that "to a reasonable degree of medical probability, no acts or omissions to act by [Wilson] or any of the physicians and non-physician personnel who care[d] for [Alvarado] during the February-March 2016 admissions caused or contributed in any way to [Alvarado's alleged injuries]."  Dr. Frazee further opined that any possible damage to the cranial shunt during Wilson's attempts to tap it had no relationship to Alvarado's ultimate diagnosis and "could not have caused or contributed in any way to [Alvarado's] alleged injuries."

Alvarado now argues his own declaration suffices to establish a factual dispute requiring trial on this point.  It states in pertinent part that "[w]hen [Wilson] performed the 4-5 attempts to tap my head shunt without my consent it caused severe physical pain, severe mental suffering, emotional distress, feeling of humiliation and anxiety."  While this constitutes evidence of harm, it is not competent evidence of causation.  To properly rebut Wilson's proffered expert testimony opining Alvarado's injuries were not caused by his attempt to tap the shunt, Alvarado was required to provide expert testimony of his

14

own establishing the attempt to tap the shunt was causally related to harm he suffered.  (See *Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402 [causation in personal injury action must be proven "within a reasonable medical probability based upon competent expert testimony"].)  He did not do so.  Dr. Frishberg's declaration, the only expert testimony submitted by Alvarado that addressed causation, did not specifically address the attempt to tap the shunt or link it to any injury Alvarado suffered.  As a result, the trial court correctly concluded Alvarado had not raised a triable issue of material fact as to causation on his medical battery claim.

### C.     The Medical Malpractice Cause of Action
#### 1.     Elements of the claim

"'[I]n any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." [Citation.]' [Citation.]" (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606 (*Hanson*).)  A medical malpractice plaintiff "must show that defendants' breach of the standard of care was the cause, within a reasonable medical probability, of his injury." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 509; see also *Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569 ["Where the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation"].)

15

## 2. *The trial court erred by sustaining objection 11 to Dr. Frishberg's declaration*

Alvarado challenges the trial court's ruling sustaining objection 11 to Dr. Frishberg's declaration. To reiterate, objection 11 was aimed at Dr. Frishberg's statement that "[t]he failure to detect the papilledema and increased intra-cranial pressure that was in all medical probability present during the February-March 2016 hospitalization allowed the increased intra-cranial pressure and papilledema to continue to progressively worsen and was in all medical probability a substantial factor in causing [Alvarado's] loss of vision." Wilson objected this statement was "[v]ague and ambiguous as to whether this opinion is meant to apply to Defendant, [Wilson]; also a conclusion."[8]

Neither Wilson nor the trial court disputes Dr. Frishberg was qualified to opine regarding the standard of care for providers who care for patients with neuro-ophthalmologic problems and the harm, if any, the violations of the standard of care caused to Alvarado. Dr. Frishberg's declaration also averred he was familiar with the pertinent medical records and testimony, which were submitted with Alvarado's opposition to Wilson's motion.

This review of records and the terms of Dr. Frishberg's declaration itself establish Wilson's actions—or, more precisely, his omissions—are encompassed by Dr. Frishberg's causation opinion. The records detail what Wilson did and did not do, and Dr. Frishberg's declaration makes specific reference to one of

---

[8] There was more to the objection, as quoted earlier, but Wilson relies only on this portion of the objection to avoid reversal on appeal.

16

Wilson's progress notes. Dr. Frishberg's causation opinion is also expressly rendered in terms that apply to all the "physicians and non-physician personnel who cared for [Alvarado]", and the reference to "non-physician personnel" includes Wilson, the only named defendant who is not a doctor (or an entity).[9] Dr. Frishberg also reemphasizes the intended scope of his opinions when he states (without objection) that a proper ophthalmologic eye exam to detect papilledema was never performed "by any healthcare provider" during Alvarado's hospitalization; the use of the "healthcare provider" shorthand rather than the more limited terms "doctor" or "physician" plainly encompasses Wilson.

The declaration's explanation of the reasons for the causation opinion expressed is also adequate, particularly in light of the summary of records reviewed that precedes it. Dr. Frishberg explains it is his view, to a reasonable degree of medical certainty, that Alvarado was experiencing increased intracranial pressure on March 1, 2016, (the day he was treated by Wilson), increased intracranial pressure causes papilledema,

[9] As discussed earlier, the trial court sustained an objection to this statement in the declaration as "overbroad." We are flummoxed by the ruling. There is no recognized evidentiary ground to disregard opinion testimony (as distinguished, say, from discovery document requests) as overbroad. The use of "physician and non-physician personnel" in the preface to Dr. Frishberg's expression of his opinion on causation is rather obvious shorthand meant to include all of the defendants, and nothing prohibits an expression of an opinion in these economical terms. Insofar as the trial court used "overbroad" to mean lacking foundation as to Wilson, that too would be incorrect in light of Dr. Frishberg's expertise and his review of records. We accordingly consider the statement in our analysis, even though it is not essential to it.

17

no "healthcare provider" (read: Wilson or any of the other defendants) performed a proper ophthalmologic eye exam to detect papilledema during Alvarado's hospitalization, and the "failure to detect the papilledema and increased intra-cranial pressure that was in all medical probability present during the February-March 2016 hospitalization allowed the increased intra-cranial pressure and papilledema to continue to progressively worsen and was in all medical probability a substantial factor in causing [Alvarado's] loss of vision." Particularly when viewed in light of settled law that Alvarado is "entitled to all favorable inferences that may reasonably be derived from [his expert's] declaration" (*Hanson, supra*, 76 Cal.App.4th at 607), that is an adequate, non-conclusory causation opinion as to Wilson.

Wilson cites *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206 (*Alexander*) to resist this conclusion. In *Alexander*, the appellate court found an expert's opinions about the standard of care were deficient because they lumped the defendants together without indicating how each defendant's acts constituted a violation. *Alexander* is inapposite for two reasons. First, the excluded opinion in *Alexander* concerned the standard of care, an issue that often requires more individualized discussion, not causation. (*Id.* at 232.) Second, the situational differences between the named defendants in that case were extreme. For example, some of the physician defendants included in the causation opinion had not even treated the patient on the relevant date. (*Id.* at 231.) Here, in contrast, it is undisputed that Wilson treated Alvarado during the relevant time period.

18

Wilson also contends Dr. Frishberg's declaration is conclusory and thus inadmissible because it does not address opinions stated by Wilson's own expert, Dr. Frazee. More specifically, Wilson contends Dr. Frishberg's opinion is inadmissible because it does not address Dr. Frazee's opinion that Wilson properly recommended a doctor perform a lumbar shunt tap on Alvarado, Dr. Shragg performed the procedure, and once Wilson noted Dr. Shragg's finding that Alvarado's fluid pressure was low/within normal limits, the standard of care did not require Wilson to further treat Alvarado. That Dr. Frishberg did not expressly address Dr. Frazee's opinion does not render his declaration inadmissible and summary judgment therefore proper; at most, it would be a question of the weight to be given his opinion.[10]

Because we conclude the trial court erred in sustaining the objection to the causation paragraph in Dr. Frishberg's declaration, we also conclude the trial court erred in granting summary judgment. Dr. Frishberg's causation opinion, which contrasts with Dr. Frazee's opinion, creates a triable issue of material fact. Accordingly, the trial court erred in granting summary judgment, and summary adjudication of the medical malpractice cause of action was not warranted.

In the circumstance we now have, where "an appellate court reverses summary judgment on grounds affecting fewer

[10]    Even if it were a question of admissibility, Dr. Frishberg's declaration does address the lumbar shunt tap by noting Dr. Shragg's deposition testimony indicated he had not used the proper tool to measure Alvarado's opening pressure and had instead "guessed" the pressure was low. Wilson also concedes that Hlavin's declaration raises a triable issue of material fact as to whether the standard of care was followed.

19

than all causes of action, the appellate court may direct the trial court to enter an order granting summary adjudication of the unaffected causes of action so long as the moving party alternatively moved for summary adjudication of them. [Citations.]" (*Severin Mobile Towing, Inc. v. JPMorgan Chase Bank, N.A.* (2021) 65 Cal.App.5th 292, 302-303.) Because Wilson did move for summary adjudication in the alternative, that will be our disposition.

## DISPOSITION

The judgment is reversed. The cause is remanded with directions to vacate the order granting summary judgment and enter a new order summarily adjudicating the medical battery, informed consent, and fraud causes of action in Wilson's favor while denying summary adjudication of the medical malpractice cause of action as alleged against Wilson. Alvarado shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.                    MOOR, J.

20