[Civ. No. 5665.   Third Appellate District.—October 19, 1936.]

THEODORE E. MARTIN, Respondent, v. L. G. SILLER, Appellant.

154

Gerald M. Desmond and Stanley W. Reckers for Appellant.

H. N. Mitchell and George E. Foote for Respondent.

PLUMMER, J.—Plaintiff had judgment in the sum of $5,000 for an injury to his left eye causing the entire loss of sight thereof, by reason of coming into collision with an iron pipe in a curtain which rolled down over a marquee along the west side of premises belonging to the defendant known as the Lenhart Hotel. From this judgment the defendant appeals.

The complaint alleges and the testimony of the plaintiff is to the effect that on the afternoon of the 24th day of August, 1935, he and one Harry Newcombe were walking in a southerly direction along the sidewalk on the east side of Ninth Street between streets known as K and L in the city of Sacramento; that the building and premises of the defendant known as the Lenhart Hotel, front on the sidewalk upon which plaintiff was walking. Attached to the front of the hotel premises at some distance above the sidewalk and extending out about three-quarters of the width of the sidewalk was a solid marquee. This marquee extended along the entire front of the hotel premises. At the outer edge a canvas curtain was installed which rolled up and down upon a roller attached to the marquee. At the lower edge of the curtain was a hem and inside the hem was a one-half inch hollow iron pipe.

The plaintiff's testimony is further that as he and Harry Newcombe were walking along engaged in conversation, he was suddenly stopped short by the lower corner of the curtain and end of the pipe striking his left eye. The canvas over the end of the pipe was worn, so that a portion of the

pipe was exposed. The plaintiff testified that his eye was injured to such an extent by his contact with the exposed portion of the pipe that he lost the sight thereof.

There is no denial of the fact that the curtain just referred to maintained by the defendant was in contravention of an ordinance of the city of Sacramento, in that it came within the prohibited distance of the sidewalk. No question is made that the damages awarded are excessive and no issue is raised as to the fact that the plaintiff has lost the sight of his left eye. The only real question presented by the record is based upon the theory that the injury could not have been caused by the left eye of the plaintiff coming in contact with the iron pipe. This theory is based upon the testimony of some physicians, to the effect that the injury must have been caused by some slight projecting metal or instrumentality not over the size of a pinhead. The total depth of the injury to the eye is not over one-fifth of an inch, and the testimony of the physicians was to the effect that the instrument with which the plaintiff came in contact must have had what was called a ''spine'' or ''spicule'' of the size of an ordinary pinhead. It was argued from this that as there was no specific testimony to the effect that there was a spine or spicule of the size of a pinhead on the end of the iron pipe, therefore, that the injury to the plaintiff's eye must have been occasioned by some other instrumentality. This is illustrated by the following question and answer: ''Q. And into the lens itself, Doctor, and, this wound wasn't made by a pipe unless it was—unless there was a sharp prong or pin or nail or something of that sort in the pipe, was it, Doctor? A. No.'' The same witness further testified that the wound was a triangular puncture. Two witnesses who examined the pipe with which the plaintiff claimed to have come in contact, testified in substance as follows: That the end of the pipe was jagged, sort of triangular shape; that the pipe had been cut and left with the edges rough, not filed down or smoothed in any way. There is further testimony in the record to the effect that an instrument less than one-fifth of an inch in length would cause a penetration of the eye farther than that distance. The testimony in the record further shows that the wound to the eye was perhaps the size of a pinhead. One of the doctors, after testifying that

a blunt substance would not produce the injury, testified as follows: "Q. Doctor, assuming that the patient did collide with a blunt substance such as the end of a pipe (we will call that blunt), and that upon the end of that pipe there was a small, sharp protrusion of some kind, would that have caused the injury complained of in that case? A. If there were a sharp, pointed substance on the end of that pipe it could produce this injury."

One of the witnesses testifying as to the condition of the pipe, testified as follows: "Q. What was the condition of this pipe? Was it rounded or was it dull or was it sharp? A. No, it was sharp, as though it had been cut off and not filed round in any way. Q. Just as though it had been cut off with a pipe-cutter? A. Yes, sir." There seems to be no controversy in the testimony that the edges of the pipe were rough, and that they had not been filed down or smoothed in any manner whatsoever.

The testimony of the plaintiff is as follows: "I am thirty years of age. On the afternoon of the 24th of August, 1935, in company with Harry Newcombe, I was walking down Ninth Street when something struck me; it struck me in the left eye. I put my hand up over my eye; then I saw the awning immediately in front of me. I reached out and took hold of the rod or pole at the bottom of the awning. I am about five feet in height, five feet and five inches. Then I went into the house and applied some hot towels to my eye, but got no relief." The witness then stated that he went into the house where he was living, where there were two families; that he could not hold his eye open; it was too painful. Then, in about twenty minutes afterwards he went back to the Lenhart Hotel to see Mr. Siller and have him furnish a doctor. "I asked for Mr. Siller, and then explained to Mr. Siller what had happened. Mr. Siller told me he did not know any doctor and suggested that I go over to the Land Hotel and find Dr. Baird. Not finding him in, I went down to the Emergency Hospital. It was then about seven o'clock. I waited for about ten minutes and then I was laid on a table by Dr. Teall." The witness then stated where he had spent some time on the afternoon of August 24th, before receiving the injury to his left eye, which is not material.

The witness Newcombe testified as follows: "I was with the plaintiff on August 24, 1935, between the hours of five and six o'clock in the afternoon. I know where the Hotel Lenhart is. We were walking down Ninth Street on the east side of Ninth Street going south. I was walking on the side next to the hotel. We were walking along in a natural manner. All at once Mr. Martin let out an exclamation. I asked him what was the matter. He said he bumped that awning, and stood there and wiped his eye. I looked at it. We stopped a couple of minutes and then went down the street. Immediately after Mr. Martin collided with the awning, I observed it. It was about five feet above the level of the sidewalk. We went down to the room where we were living at 809 M Street, and he held his handkerchief over his eye all the way home. I walked in the room with him and he went in there and bathed the eye and put packs on it." As we have stated, the awning overhanging the sidewalk was at an elevation much less than that prescribed by a city ordinance and, therefore, that its maintenance was negligence *per se*.

Dr. Teall testified that when the plaintiff came to the hospital, he examined the wound and found that it was a recent one.

█ We have thus presented for consideration the positive testimony of witnesses that the plaintiff came in contact with the jagged edge of a hollow pipe, on the 24th day of August, 1935, as alleged in his complaint, and as we have said, that pipe was being maintained at a place prohibited by an ordinance of the city of Sacramento. The pipe was hollow, and where it had been sawed off the edges were left rough. The size of the wound required a projection not greater than that of a pinhead. The theory upon which appellant bases his appeal is that there should have been some testimony to the effect that on the ragged or jagged edges of the iron pipe there was observed a spine or spicule of that size; that the ragged edge of the pipe would not cause such a wound does not appear to be denied by any of the expert witnesses. The questions propounded to them were limited to an instrument having a blunt end. The jury, by their verdict, undoubtedly accepted the positive testimony as to the manner in which the injury had been occasioned, and rejected the theoretical defense advanced by the appellant that the blunt instrument, in

addition to being ragged and jagged, must have had what is called a projecting spine or spicule of the size hereinbefore stated. We think the jury was amply justified in accepting the positive testimony and disregarding the theoretical assumptions that the injury must have been caused in a different manner.

The appellant in his brief makes this statement: ''Where the eye strikes the pipe end and an injury to the eye results, expert testimony is required to determine the exact character of the injury before it can be decided that the pipe end produced the injury.'' Neither authority nor logic supports this statement. Common reasoning tells us that if the eye strikes the end of a pipe, and an injury to the eye results, expert testimony is unnecessary.

Appellant contends further, that the court erred in permitting Dr. Jones to answer the following question, to wit: ''Q. Assuming· that the patient did collide with a blunt substance such as the end of a pipe (we will call that blunt), and that upon the end of the pipe there was a small, sharp protrusion of some kind, would that have caused the injury complained of in this case?'' The doctor answered as follows: ''If there were a sharp pointed substance at the end of that pipe it could produce this injury.'' Two witnesses testified, as we have stated, that the end of the pipe was rough or jagged and had not been filed down. No injury could possibly have resulted from the allowance of the question and the answer given by the witness. That the injury to the plaintiff was proximately caused by the negligence of the defendant in allowing an instrument like the end of a pipe described herein, to hang over a sidewalk in such a position as to come in contact with a pedestrian's eyes, we think admits of no controversy.

The trial court heard all the witnesses, and denied the appellant's motion for a new trial. We of course are confined only to the record before us, but as we read the record, we think it shows no merit in the appeal, and, therefore, the judgment must be and the same is hereby affirmed.

Pullen, P. J., and Thompson, J., concurred.