Filed 12/21/15  Czternasty v. Vereker CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LES CZTERNASTY, | D065932 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00068094-CU-PA-EC) |
| LORI VEREKER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed.

Les Czternasty, in pro. per., for Plaintiff and Appellant.

McDougal, Love, Eckis, Boehmer & Foley and John E. Petze for Defendant and Respondent.

This appeal arises from a personal injury lawsuit that followed a motor vehicle accident involving plaintiff Les Czternasty and defendant Lori Vereker.  At the close of

Czternasty's case, the trial court granted Vereker's motion for nonsuit. Czternasty

contends this was error. We agree and reverse.[1]

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 8, 2010, Vereker drove her vehicle into an intersection after the signal

light turned red, causing her vehicle to collide with Czternasty's. Czternasty sued to

recover damages for medical expenses, pain and suffering, emotional distress resulting

from a brain tumor allegedly caused by the accident, property damage, lost earning

potential, lost profits, and transportation expenses.

Trial was held on March 17, 2014. Czternasty represented himself. Vereker

moved in limine to exclude evidence of Czternasty's noneconomic damages under Civil

Code section 3333.4, which generally precludes an uninsured driver from recovering

noneconomic damages caused by an automobile accident.[3] Czternasty opposed the

---

[1]     Czternasty contends the trial court also erred by denying a trial continuance, telling the jury he was uninsured, and discussing an uninsured motorist statute with Vereker's counsel. Because we reverse the nonsuit, we need not address these additional contentions.

[2]     Because we are reviewing a judgment after a nonsuit, we summarize the facts produced at trial in the light most favorable to Czternasty. (See *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 930.)

[3]     Civil Code section 3333.4 provides as follows: "(a) Except as provided in subdivision (c) [regarding a claim for damages by an uninsured driver against a driver who was convicted of driving under the influence at the time of the accident], in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] . . . [¶] (2) The injured person was the owner of a vehicle

2

motion, arguing he was insured at the time of the accident. The trial court reserved ruling on the motion.[4]

During his case-in-chief, Czternasty called Vereker as his first witness under Evidence Code section 776. She admitted entering the intersection while the signal light was red and that her vehicle was "totaled" in the collision.

Czternasty testified in narrative format. He stated he entered the intersection on a green signal light when Vereker entered on a red, causing their vehicles to collide. The front end and suspension of Czternasty's vehicle were bent, but he was able to slowly drive it away. Vereker's vehicle had to be towed away. Czternasty said he and Vereker exchanged insurance and driver's license information. A sheriff's deputy who happened on the scene did not become involved.

Czternasty stated that immediately after the collision he felt something wet on his clothing, felt a huge bump on his forehead and hand, and his "butt hurt[] very badly." As a result, he visited a doctor in the "[n]ext couple of days." Czternasty said he suffered back pain so intense he could not move. He also had difficulty concentrating. As of trial, three years after the accident, Czternasty testified he still suffered pain and had a bump on his head.

---

involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state."

[4] Despite reserving ruling, the trial court told the jury Czternasty's "claim is subject to Civil Code section 3333.4 because he did not have and cannot show proof of automobile liability insurance." (Italics omitted.) As noted in footnote 1, *ante*, we need not address the propriety of this remark.

Czternasty tried to testify about his doctor visits and medical diagnoses, but the trial court sustained hearsay and foundational objections.

Czternasty testified he wore a soft neck collar and walked with a cane to keep himself in an upright position. Nevertheless, he was in so much pain he was unable to work at his trucking business because he was no longer able to do the physical work required to maintain the vehicles. After a few months, Czternasty "gave up the business." He testified regarding his business's revenues in 2008, 2009 and 2010, based on having two trucks. He further testified he expected to have been operating two additional trucks beginning in 2011.

At the conclusion of Czternasty's direct testimony, the court took a brief recess. When trial resumed, Czternasty informed the court he had left his insurance documents downstairs either in his car or at the court's security checkpoint; he anticipated being cross-examined on the issue. After Vereker reserved cross-examination for her case-in-chief, Czternasty rested.

That same day, Vereker filed a written motion for nonsuit. She argued Czternasty "failed to make a prima facie case for legal causation for his alleged injuries, past and future treatment, past and future medical specials, and disability because (i) those issues are outside the common lay knowledge and experience of the trier of fact, (ii) the plaintiff failed to introduce any competent testimony or other evidence from any expert witness, and (iii) plaintiff's medical records are inadmissible hearsay."

Czternasty orally opposed the motion, arguing: "Ms. Vereker admit[ted] . . . that it was her fault. The medical problems arose after the accident causing me to be practically

4

incapable to work at that time. I was treated by . . . medical staff. I was in emergency rooms. I was treated by doctors. And I would like to get a chance to prove my case in the court."

The trial court denied Czternasty's request and granted Vereker's motion, explaining: "Let the record reflect there is no evidence before the jury of any type of medical bills. Let the record reflect there is no evidence of any doctor's testimony. There is no expert—there is no testimony of any expert in this case as to the causation of any injuries that have been alleged by the plaintiff, not one doctor has . . . testified in this case. There has been no evidence presented to the jury as to medical bills. [¶] In reviewing that and the state of the evidence, because the plaintiff has rested his case-in-chief, in reviewing that, in the court's mind, the motion for nonsuit will be granted."

Czternasty stated he did not understand the court's ruling and explained he wanted to retrieve the documents he left downstairs. The court clarified Czternasty was referring to insurance documents and stated, "you don't need those." The court discharged the jury and later entered a judgment of nonsuit.[5]

DISCUSSION

Czternasty contends the trial court erred by granting the nonsuit motion.

Czternasty's opening brief (he did not file a reply) fails to comply with court rules regarding use of headings, citations to the record, and citations to authority. (See Cal. Rules of Court, rule 8.204.) Ordinarily, these failures would constitute a forfeiture of the

---

[5]   The court takes judicial notice of the judgment, which was not included in the clerk's transcript or in respondent's augmented record.

5

issues on appeal. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1831, fn. 4.) However, because the record is relatively small, respondent has not complained of the deficiencies, and we have the benefit of a transcript of the trial and nonsuit hearing, we decline to invoke the forfeiture doctrine.

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor." ' [Citation.] A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be substantial evidence to create the necessary conflict.' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 (*Nally*), italics omitted; see *Sandoval v. Los Angeles County Dept. of Public Social Services* (2008) 169 Cal.App.4th 1167, 1178, fn. 11.)

In reviewing a grant of nonsuit, we review the entire record de novo and are guided by the same rules requiring us to evaluate the evidence in the light most favorable to the plaintiff. (*Nally, supra*, 47 Cal.3d at p. 291; *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.)

We conclude the trial court erred by granting Vereker's nonsuit motion. The trial court correctly ruled that Czternasty needed expert testimony to establish certain of his

6

injuries were caused by the collision. For example, whether Czternasty's brain tumor resulted from the collision is a sufficiently complex causation issue "beyond common experience" such that expert testimony was required.[6] (See, e.g., *Jones v. Ortho Pharm. Corp.* (1985) 163 Cal.App.3d 396, 403 ["Although juries are normally permitted to decide issues of causation without guidance from experts, 'the unknown and mysterious etiology of cancer' is beyond the experience of laymen and can only be explained through expert testimony."].) The same is true regarding Czternasty's claim his difficulty concentrating resulted from the accident.

We also recognize Czternasty failed to support certain components of his damages claims with *any* evidence. For example, although he testified he sought medical treatment, Czternasty offered no evidence of any expenses he incurred in doing so. Nor did Czternasty offer any evidence of any expenses incurred as a result of damage to his vehicle.

However, there were at least two categories of damages Czternasty was not required to establish via expert testimony and for which he offered sufficient evidence to reach a jury: noneconomic damages and lost profits/earning capacity.

*Noneconomic Damages*

Czternasty was not required to introduce expert testimony to establish that his back pain and the bump on his head were caused by the collision and caused him pain and suffering. He testified the collision caused him to immediately suffer both injuries.

---

6     Although Czternasty's complaint alleged the accident caused him to suffer a brain tumor, he offered no evidence at trial to support his claim.

This causation mechanism is not "beyond common experience" such that expert testimony was required. (Evid. Code, § 801, subd. (a); see, e.g., *Martin v. Siller* (1936) 17 Cal.App.2d 153, 158 ["Common reasoning tells us that if the eye strikes the end of a pipe, and an injury to the eye results, expert testimony is unnecessary."].) Further, the record contains no evidence suggesting either injury was the result of a preexisting condition or was caused by any intervening event.[7]

Nor was expert testimony necessarily required to establish that Czternasty's injuries caused him to suffer noneconomic damages. Expert testimony is neither required nor appropriate to establish damages for pain and suffering. (See *Loth v. Truck-A-Way Corp.* (1998) 60 Cal.App.4th 757, 767 ["A plaintiff's loss of enjoyment of life is not 'a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' "]; CACI No. 3905A ["No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense."].)[8]

Although there was a question whether Czternasty was uninsured such that Civil Code section 3333.4 would have precluded him from recovering noneconomic damages,

[7]    The only evidence of a preexisting condition is Czternasty's testimony that he has had a metal plate in his right leg since 1978.

[8]    To the extent Czternasty sought to recover damages for *future* pain and suffering, he would have had to introduce expert testimony that he would endure future pain and suffering. (See *Oliveira v. Warren* (1938) 24 Cal.App.2d 712, 716 ["where an injury is subjective and of such a nature that laymen cannot, with reasonable certainty, know whether or not there will be future pain and suffering, expert evidence by men learned in human anatomy must be offered"].)

the trial court's statement to Czternasty that "you don't need those [insurance documents]" indicates the trial court's ruling was not based on Czternasty's insurance status. To the extent it was, the court should have allowed Czternasty to reopen his case-in-chief to introduce evidence he was insured. (See *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 886 ["In response to a motion for nonsuit, a plaintiff has the right, upon request, to reopen its case to remedy defects raised by the nonsuit motion."].)

*Lost Profits/Earning Capacity*

Czternasty was not required to introduce expert testimony to establish his lost profits or lost earning capacity. (See *Gargir v. B'nei Akiva* (1998) 66 Cal.App.4th 1269, 1280; Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2015) ¶ 3:74, p. 3-81; *id.* at ¶ 3:125, p. 3-95.) He testified his injuries prevented him from working and forced him to abandon his business. He further testified regarding his business revenues in the three years preceding the accident and regarding anticipated expansion. He was not required to substantiate this testimony with expert opinion to reach a jury.

Because Czternasty presented sufficient evidence of liability and causation—at least as to some of his damages—the court erred in granting the nonsuit motion. The fact there is a dispute regarding the amount of his damages does not justify the court's decision.

9

DISPOSITION

The judgment is reversed.  Czternasty is entitled to his costs on appeal.

                                                                              HALLER, J.

WE CONCUR:


McCONNELL, P. J.


PRAGER, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.