Filed 5/24/23  Munroe v. City of Tracy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| CHRISTEN MUNROE, | C095177 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CV-UAT-2018-0006183) |
| v. | |
| CITY OF TRACY et al., | |
| Defendants and Appellants. | |

Plaintiff Christen Munroe (Plaintiff) sued defendants Gustavo Cisneros and the City of Tracy (collectively Defendants) for negligence arising out of a traffic accident. She alleged that Cisneros, a police officer for the city, negligently backed into her car in a parking lot, and that the accident caused injuries to her neck.  Defendants conceded Cisneros was negligent, and the jury found his negligence was a substantial factor in causing Plaintiff's injuries and awarded her $100,000 in past noneconomic damages and $175,000 in future noneconomic damages.  Defendants appeal, arguing (1) there is not substantial evidence Plaintiff's injuries were caused by the accident; (2) the trial court

1

abused its discretion when it allowed Plaintiff to testify about her understanding of the results of a CT scan and an MRI of her neck; and (3) there is insufficient evidence to support the award of future noneconomic damages. We disagree and thus affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the primary issue on appeal is whether substantial evidence supports the jury's verdict, we find it useful to preface our summary of the evidence with a reminder of the standard of review. "We review a jury's findings of fact under the deferential substantial evidence standard. [Citation.] According to this standard, ' " 'the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the [verdict]." ' [Citation.] We must view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.] We are not at liberty to reweigh the evidence or judge the credibility of witnesses." (*Tesoro del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 634.) "[T]he testimony of a single witness can constitute substantial evidence." (*Flores v. Liu* (2021) 60 Cal.App.5th 278, 296.) Viewed in the light most favorable to Plaintiff, the evidence shows the following.

The accident occurred on July 30, 2016, in a Walgreens parking lot. Cisneros was heading out of the parking lot when he noticed a car backing out of a parking stall. He stopped his car and put it in reverse in order to avoid the car that was backing out, and he ran into Plaintiff's car, which was behind him. He admits he did not look over his shoulder or in his rearview mirror, and that the accident was his fault.

According to Plaintiff, Cisneros quickly reversed and "slammed" into her car. She heard a "lot of noise," "glass breaking," and "metal grinding." She testified Cisneros's vehicle came "on top of" hers, and she heard a "large scraping sound" when he pulled his vehicle forward. During her deposition (portions of which were read at trial), she testified she heard her airbags pop, but they did not deploy. Although photos showed

2

only slight visible damage to Plaintiff's car, she testified she took it to a body shop and they had to repair "[t]he front end of my vehicle.  [¶] . . . [¶]  The frame, the radiator, the air conditioner."  She testified she viewed the car while it was in the body shop, and "what I saw was the radiator had punch marks in it.  There was a . . . big metal bar at the end that pointed towards me, and it was rammed in."

Plaintiff testified the impact of the accident caused her body to "move backwards" into her seat, and "my chin touched my chest."  During her deposition, she testified she heard "a horrible crunching inside my neck" when the accident occurred.  She testified the accident left her "shaken" and her "heart was thumping," but she "felt that everything would be fine," and she declined Cisneros's offer to call an ambulance.  She went home, and later that evening her neck and her left ankle began to hurt.  She had trouble sleeping that night, and the next morning she was "not able to move.  But when I did, every joint in my body felt damaged.  Everything was hurting."  She went to the emergency room (ER) that day because "I was extremely nauseous.  My neck was in pain and there was something wrong with my left leg."  In the ER, they gave her a pill that helped her nausea, and they did a CT scan of her neck.  Her understanding was that the CT scan showed her neck was not broken, but there appeared to be "some inflammation."

Following her visit to the ER, Plaintiff "laid in bed basically for five days and basically did nothing" due to the pain in her neck and her leg.  She also had a headache and "the nausea kept coming back."  She followed up with her primary care physician about a week later, who prescribed hydrocodone (a pain medication) and physical therapy.  She had several physical therapy sessions but eventually stopped because they made her feel worse.  The physical therapist gave her a neck brace, which helped her neck.

In or around October 2016, Plaintiff got an MRI, and her understanding is that the MRI showed "damage" to her neck.  She was referred to a pain management specialist, who referred her for an epidural.  She got the epidural in December 2016, but it did not

get rid of the pain and it made her neck feel like it was "on fire." Not long after the epidural, she went back to the ER because "I was in extreme pain. My neck was on fire. I needed something to relieve me." The ER offered her more medication, but "I don't like taking pills. I wanted them to tell me what was wrong with me, why my body wasn't taking care of this, and what I should do about it."

Plaintiff testified she tried acupuncture for several weeks, which helped the pain in her ankle but not the pain in her neck. She also testified she saw a neurologist "because of the nerves and the tingling down the left side of my arm, and down into my foot into my toes." The neurologist referred her back to pain management, but she didn't want to just manage her pain, she wanted to get better.

Near the end of 2020, Plaintiff saw Dr. Ali Najafi. Dr. Najafi ordered another MRI, and it is her understanding that this MRI showed "considerable more damage in my neck, in the structure of my neck. And it is my understanding that there was a procedure, a surgery, that could definitely help me." She testified she intended to have the surgery in the next six to 12 months.

Plaintiff testified that, prior to the accident, she had never injured her neck, and her physical health was "[f]antastic. I was 55 feeling 35." She was active and engaged in daily exercise, including hiking and taking her dog on walks. Since the accident, the pain in her neck has not gone away. It is hard for her to sleep because "[t]he pain is excruciating." Prior to the accident, she regularly got a full eight hours or more of sleep a night; now she sleeps for "maybe two hours" at a time. Following the epidural, she started having spasms in her neck, and they "haven't stopped" and "have only increased in severity." She was asked during the trial whether she was experiencing neck pain while testifying, and she responded, "Very much so." She described the pain as "[a] burning, a constant jabbing and, of course, the forever-ending muscle spasms." She testified it is painful to look up and to move her neck from side to side. She testified the pain was "always there but I do have my good days and I have my bad days." On a good

day, the pain is "minimal," and she has few, if any, muscle spasms; on a bad day, the pain is "horrific," she locks herself in her bedroom and prays that tomorrow will be better, and she is "mad at the whole world." The pain makes it harder to do daily activities like cooking, cleaning, driving, and bathing. Before the accident she testified she "used to prepare seven-course dinners in the blink of an eye," but "that doesn't happen" anymore. Before the accident, she used to be able to clean her house in one day, but now she feels "lucky" if she can clean her bathroom in one afternoon or sweep one room in her house.

Plaintiff's neighbor, Faye, testified at the trial. Faye had known Plaintiff "for a good amount of time" before the accident. She testified that, before the accident, she never observed that Plaintiff had any complaints about her neck, and Plaintiff was "[v]ery upbeat. Very energetic. We would go for walks. She did quite a bit of dog walking. . . . [¶] We would oftentimes . . . help the homeless out with a meal or something like that." After the accident, Faye noticed a change in Plaintiff's mood, demeanor, and physical abilities. "I did notice . . . mood swings. . . . [S]he wasn't as energetic. She wasn't going out as much." "[S]he was not able . . . to get out and be expressive, be the people person that she was." "She was not able to walk. . . . [S]he had to use a cane." She needed assistance getting into a car. "[S]he was not able to . . . get food and stuff to eat," and Faye would either drive Plaintiff places or Plaintiff would have her food delivered. Faye accompanied Plaintiff to two or three doctor's appointments, including the epidural appointment.

By the time the case was submitted to the jury, Plaintiff sought only noneconomic damages for pain and suffering,[1] and Defendants admitted Cisneros was negligent and that his negligence caused the accident. The jury was thus asked to decide only two questions: (1) Was Cisneros's negligence a substantial factor in causing harm to

---

[1] In her complaint, she also sought damages for medical expenses and lost earnings.

5

Plaintiff? (2) If yes, what are Plaintiff's past and future noneconomic damages? The jury answered "yes" to the first question and awarded Plaintiff $100,000 in past noneconomic damages and $175,000 in future noneconomic damages. Judgment was duly entered, and this appeal followed.

**DISCUSSION**

**1.       Causation**

Prior to trial, Defendants filed a motion in limine to exclude all expert testimony because Plaintiff failed to timely serve a designation of expert witnesses. The trial court granted the motion, and Plaintiff does not challenge that ruling on appeal. Because Plaintiff had identified Dr. Najafi as a witness, the trial court stated he would only be permitted to testify as a fact witness and would not be permitted to testify as an expert or to offer any opinion on causation. During a subsequent Evidence Code section 402 hearing held at Defendants' request, the court excluded Dr. Najafi's testimony entirely, finding that, because he would be prohibited from testifying to causation, his testimony as a treating physician was not relevant. That left Plaintiff with no expert testimony and no testimony from a treating physician. Defendants argue that expert testimony was required in order to establish causation, and that without an expert, there is not substantial evidence to support the jury's finding that the accident was a substantial factor in causing Plaintiff pain and suffering. We disagree.

As briefly noted above, "when a . . . factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court [or the jury]. If such substantial evidence be found, it is of no consequence that the trial court [or the jury] believing other evidence, or drawing other reasonable inferences,

6

might have reached a contrary conclusion." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted.) The testimony of a single witness, "even the party herself," may be sufficient to support the jury's findings. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 134.) Moreover, "We are bound by the fundamental appellate rule that the judgment of the lower court is presumed correct and that all intendments and presumptions will be indulged in favor of its correctness. [Citation.] The appellant has the burden to overcome that presumption and show reversible error. [Citation.] Where, as here, the issue on appeal turns on a failure of proof, the question for a reviewing court is whether the evidence compels a finding in favor of the appellant as a matter of law, i.e., whether the evidence was ' " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citations.]" (*Fowler v. Golden Pacific Bancorp, Inc.* (2022) 80 Cal.App.5th 205, 224-225.) "Needless to say, a party 'raising a claim of insufficiency of the evidence assumes a "daunting burden" ' [citation]." (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.) Defendants fall short of overcoming this burden.

Defendants cite cases that hold, "The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony." (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 402; see also *Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 577 [same]; *Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1336 [same].) Plaintiff responds that expert testimony is not always required to establish causation, and she cites cases that hold, "As a general matter, juries may decide issues of causation without hearing expert testimony." (*Webster v. Claremont Yoga* (2018) 26 Cal.App.5th 284, 290; see also *Miranda, supra*, at p. 1336 ["Ordinarily, a plaintiff may establish proximate cause without the testimony of an expert by providing evidence that indicates the defendant's conduct was a substantial

7

factor in producing plaintiff's damages"]; *Jones, supra*, at p. 403 [noting "juries are normally permitted to decide issues of causation without guidance from experts"].) What all of these cases recognize is that expert testimony is only required "[w]here the complexity of the causation issue is beyond common experience." (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569; see also *Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599, 1614 [same]; *Webster, supra*, at p. 290 [same].) We find that the causation issue in this case is not so complex that it is beyond common experience, and that expert testimony was thus not required in order to establish causation.

Even in personal injury cases, the complexity of the causation issue is not always beyond common experience, and expert testimony is thus not always required to establish causation. In *Martin v. Siller* (1936) 17 Cal.App.2d 153, for example, the court held expert testimony was not required to establish the plaintiff was injured when he was struck in the eye with a pipe, because "[c]ommon reasoning tells us that if the eye strikes the end of a pipe, and an injury to the eye results, expert testimony is unnecessary." (*Id.* at p. 158.) " 'If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists. In drawing that conclusion, the triers of fact are permitted to draw upon ordinary human experience as to the probabilities of the case.' " (*Raven H. v. Gamette* (2007) 157 Cal.App.4th 1017, 1029-1030.) We find that, as a matter of ordinary experience, a jury could reasonably conclude that a car accident like the one in this case might be expected to produce precisely the type of neck injury described by Plaintiff, and that the jury was thus justified in concluding a causal relation exists between the accident and Plaintiff's injury even without expert testimony.

Plaintiff testified that, prior to the accident, she was active and in good health and had never sustained an injury to her neck. She testified the impact of Cisneros's car thrust her back into her seat and caused her chin to hit her neck. That night, her neck

began to hurt, and she had trouble sleeping. The next morning, every joint in her body hurt, and she went to the ER complaining of neck pain. For the next week, she stayed in bed due to the pain. She followed up with her primary care physician, who prescribed pain medication and physical therapy. She tried pain management, physical therapy, acupuncture, and an epidural, but nothing cured the pain. She testified that the pain has never gone away, that on bad days it is horrific, and that she was in pain while she was testifying at trial (and we note the trial occurred five years after the accident).[2] She testified that the pain adversely affects both her ability to perform everyday tasks and her mood. There is no evidence in the record of an intervening event or accident that could have caused her pain. Her neighbor, Faye, provided at least some corroborating testimony. This constitutes substantial evidence that the accident caused Plaintiff's pain and suffering.

We also note that Plaintiff sought only noneconomic damages, and that, as a general rule, expert testimony is not required to establish pain and suffering. "The absence of medical testimony cannot of itself serve to foreclose recovery for pain and suffering; expert testimony is not a prerequisite to the framing of a question for the jury on this issue." (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 895.) "[P]laintiff's own testimony commonly establishes his damages for pain and suffering." (*Ibid*.) "[E]ven in the absence of any explicit evidence showing pain, the jury may infer such pain, if the injury is such that the jury in its common experience knows it is normally accompanied by pain." (*Id*. at p. 896.) Defendants fail to convince us either that neck pain following a car accident is beyond common experience, or that the jury was incapable of deciding the causation issue without expert testimony.

---

[2] The accident occurred in July 2016, and the trial was held in August 2021.

To support their argument that expert testimony was required, Defendants cite several cases involving the etiology of cancer or some other disease. In such cases, courts have uniformly held " 'the unknown and mysterious etiology of cancer' is beyond the experience of laymen and can only be explained through expert testimony." (*Jones v. Ortho Pharmaceutical Corp., supra*, 163 Cal.App.3d at p. 403; see also *Onglyza Product Cases* (2023) 90 Cal.App.5th 776 [expert testimony required to establish prescription drug caused the plaintiffs' heart failure]; *Cooper v. Takeda Pharmaceuticals America, Inc., supra*, 239 Cal.App.4th at p. 578 [expert testimony required to establish prescription drug caused the plaintiff to develop bladder cancer]; *Miranda v. Bomel Construction Co., Inc., supra*, 187 Cal.App.4th at pp. 1336-1337 [expert testimony required to establish the defendant's actions caused the plaintiff to contract infectious fungal disease].) This case is factually distinguishable, and we thus find these authorities are not particularly relevant or helpful. The etiology of neck pain following a car accident is not as unknown, mysterious, or beyond the experience of laymen as the etiology of cancer.

Defendants also cite *Webster v. Claremont Yoga, supra*, 26 Cal.App.5th 284 to support their argument that expert testimony was required in this case. The plaintiff in *Webster* alleged she was injured when a yoga instructor adjusted her posture during a class. The defendants moved for summary judgment, arguing the instructor's actions did not cause or contribute to the plaintiff's alleged injuries. They supported their motion with a declaration from an orthopedic surgeon who stated the plaintiff's injuries were due to chronic degenerative disc disease and arthritic changes and were not consistent with an injury at the hands of a yoga instructor. The plaintiff opposed the motion but did not proffer her own expert declaration. The trial court granted the motion, finding the defendants had established they did not cause the plaintiff's injuries, and the plaintiff failed to provide any competing expert testimony. (*Id.* at pp. 286-287.) The plaintiff appealed, arguing that causation could be shown without expert testimony. The appellate court rejected this argument, finding "the causation issue was complex" because the

10

defendants had an expert who opined the plaintiff's injuries were not caused by the yoga instructor. (*Id*. at p. 290.) As a result, "It would be beyond the ability of a lay juror to determine, in the absence of expert testimony, whether plaintiff's injuries were caused by [the instructor's] actions, a chronic condition, or some other mechanism. Plaintiff cites no authority to the contrary. The trial court did not err in concluding that proof of causation in this case required expert testimony." (*Ibid*.) This case is distinguishable, however, because unlike the defendants in *Webster*, Defendants did not proffer expert testimony to the effect that Plaintiff's injuries were not caused by or consistent with a minor car accident.

Although we are not bound by it, we find *Choi v. Anvil* (Alaska 2001) 32 P.3d 1 to be instructive. The plaintiffs in *Choi* claimed they were injured when the pick-up truck they were riding in was rear-ended by a taxi. The taxi driver admitted his negligence caused the accident, and a trial was held on the issue of causation and damages. The plaintiffs testified about various symptoms they experienced following the accident, but they offered no expert testimony on causation. (*Id*. at p. 2.) The jury returned "substantial verdicts" (*ibid*.) in favor of the plaintiffs, and the driver appealed, arguing the plaintiffs were required as a matter of law to present expert testimony to establish the accident caused their " 'subjective injuries,' " i.e., injuries "where there is no observable symptom such as bleeding, swelling, or bruising, but only non-observable symptoms like pain and loss of strength." (*Id*. at pp. 2, 3, fn. 2.) The appellate court disagreed and affirmed the verdict. It noted that expert testimony was only required "when the nature or character of a person's injuries require the special skill of an expert to help present the evidence to the trier of fact in a comprehensible format," and that "[t]he record in this case demonstrates the adequacy of lay testimony to establish causation and damages of subjective injuries in typical cases." (*Id*. at p. 3.) The court noted the plaintiffs testified the accident caused their bodies to jerk, and one plaintiff testified the impact caused her head to go " 'way back.' " (*Ibid*.) The plaintiffs also testified the accident caused them

11

physical pain in their necks, shoulders, arms, and backs.  The court found "[t]his lay testimony, based on personal observation, described a situation easily understood by a jury:  a rear-end automobile collision causing relatively common injuries.  These injuries manifested in symptoms like pain, stiffness, and loss of strength.  Although a medical expert might have more precisely described the relationship between the impact and the effects described by the plaintiffs, the jury, using everyday experience, could readily find a causal relationship without this expert assistance. . . .  [¶]  In short, where alleged injuries—including purely subjective injuries—are of a common nature and arise from a readily identifiable cause, there is no need for the injured party to produce expert testimony."  (*Id*. at p. 4, fns. omitted.)

The facts in this case are similar, and we find the *Choi* court's reasoning and analysis to be persuasive.  *Choi* is also consistent with the California cases, noted above, that recognize expert testimony may not be required where the causation issue is not particularly complex and is within the jury's common experience or reasoning.  (See, e.g., *Garbell v. Conejo Hardwoods, Inc., supra*, 193 Cal.App.4th at p. 1569 ["Where the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation"]; *Raven H. v. Gamette, supra*, 157 Cal.App.4th at pp. 1029-1030 ["If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists"]; *Martin v. Siller, supra*, 17 Cal.App.2d at p. 158 ["Common reasoning tells us that if the eye strikes the end of a pipe, and an injury to the eye results, expert testimony is unnecessary"].)  Defendants fail to persuade us that the causation issue in this case is so complex that the lack of expert testimony is fatal to Plaintiff's claim.

## 2.     Hearsay

Over Defendants' hearsay objection, Plaintiff was permitted to testify as to her understanding of the results of a CT scan and an MRI of her neck.  In particular, she

testified she had a CT scan the day after the accident, and someone went over the results with her. She was asked, "What is your understanding of the CT results?" Over Defendants' hearsay objection, she was permitted to answer, "That my neck wasn't broken" and "[t]hat there appeared to be some inflammation." She also testified she had an MRI around October 2016, and that a doctor reviewed the results with her. Once again she was asked, "What is your understanding of what the results were?" And once again over Defendants' objection, she was permitted to answer, "there was damage to my neck." When questioned by the trial court about Defendants' hearsay objection, Plaintiff's counsel acknowledged there was no applicable exception to the hearsay rule, but she argued, "I'm not asking what was said or read. I'm asking what she understood." The trial court stated, "So what I hear [Plaintiff's counsel] telling me is that she is offering the information for the effect on the listener, who was the plaintiff. So, therefore, it is not being offered for the truth of the matter asserted. And so I'll go ahead and I'll overrule the objection on hearsay." Defendants argue the trial court erred in so ruling.

A trial court's ruling on whether to admit evidence is reviewable under an abuse of discretion standard and " 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard . . . that is embodied in article VI, section 13 of the California Constitution.[3] Under [that]

---

[3] Article VI, section 13 of the California Constitution provides, "No judgment shall be set aside . . . on the ground of . . . the improper admission or rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

standard, it is the burden of appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred." (*Christ*, at p. 447.) We agree the trial court erred in admitting the challenged testimony, but we find that the error was not prejudicial.

Hearsay is "evidence of a statement that was made other than by a witness while testifying . . . offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Defendants argue that Plaintiff's understanding of the results of the CT scan and the MRI could only have come from her health care providers, and that her testimony "was simply a backdoor way of admitting [the] out of court statements" of those providers. We agree.

" '[A] statement that is offered for some purpose other than to prove the fact stated therein is not hearsay.' " (*People v. Bolden* (1996) 44 Cal.App.4th 707, 714.) Plaintiff argues her testimony was not hearsay because it was not offered for its truth. Instead, she argues it was offered only "for the effect on the listener (Plaintiff)," which is what the trial court found.

"Evidence of an out-of-court statement may be admitted for the nonhearsay purpose of showing its effect on the listener so long as that effect is *relevant* to an issue in dispute." (*People v. Ramirez* (2022) 13 Cal.5th 997, 1115, italics added.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Defendants argue the effect on Plaintiff of statements made by her doctors regarding results of the CT scan and MRI is not relevant to any issue in dispute. We agree, particularly where, as here, Plaintiff fails to offer any explanation of how the effect is relevant in this case.

Plaintiff argues in the alternative that the challenged testimony was admissible because "lay witnesses are competent to testify to their knowledge of their diseases, injuries, or physical condition." This is only partially correct. "A person may testify to having had a particular disease or injury, *but the facts must be within the person's*

14

*knowledge.*" (1 Witkin, Cal. Evidence (5th ed 2012.) Opinion Evidence, § 13, p. 623, italics added.) Thus, Plaintiff could testify about her symptoms (i.e., neck pain, tingling, muscle spasms), because she personally experienced them. (See, e.g., *Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 32 [lay witness may testify about his physical condition because he personally experienced the symptoms he reported]; *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 528 ["We have no doubt that a person who suffers from genital herpes is competent to testify as to when he or she had an outbreak of the disease"].) But she could not testify as to her understanding that a CT scan and an MRI showed her neck was damaged or inflamed because she had no personal knowledge of those facts; instead, her only knowledge came from what her doctors told her about the test results. We thus agree the trial court erred in allowing Plaintiff to testify about her understanding of the results of the CT scan and the MRI.

As noted above, the erroneous admission of evidence does not constitute reversible error unless Defendants show "it is reasonably probable that they would have received a more favorable result at trial had the error not occurred." (*Christ v. Schwartz, supra*, 2 Cal.App.5th at p. 447.) Defendants fail to make such a showing. They argue the error was prejudicial because causation was the primary disputed issue, and Plaintiff's testimony about her understanding of the results of the two tests was the only objective evidence that the accident caused an injury to her neck, and the other evidence was insufficient to establish causation. As discussed above, however, we find the evidence was sufficient to establish causation even without Plaintiff's understanding there was damage to her neck. We also note that the challenged testimony does not, on its face, address causation. At best, it establishes that a CT scan and an MRI showed damage and inflammation to Plaintiff's neck, but it does not show the damage and inflammation were caused by the accident. Finally, we note that Plaintiff's counsel never mentioned Plaintiff's understanding of her injuries, or the results of the CT scan and the MRI, during closing argument. Given all of this, we are not convinced it is reasonably probable

15

Defendants would have received a more favorable result without the challenged testimony.

**3.      Future Damages**

The jury awarded Plaintiff $100,000 for past pain and suffering, and $175,000 for future pain and suffering. Defendants argue there is insufficient evidence to support the award for future pain and suffering. We disagree.

Damages may be awarded for pain and suffering that is " 'reasonably certain' to occur" in the future. (*Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 97; see also *Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 460 ["To recover future damages, a plaintiff must prove that his or her detriment is reasonably certain to result in the future"].) Defendants argue there is not substantial evidence that Plaintiff is reasonably certain to experience pain and suffering in the future because of one sentence of testimony she gave about her understanding of something Dr. Najafi told her: "[I]t is my understanding that there was a procedure, a surgery, that could definitely help me."[4] She also testified she intended to undergo the procedure in the next six months to a year. That is the extent of her testimony on either the procedure or her understanding of it. In response to Defendants' objection, the trial court would not let her provide additional testimony, noting, "She is not a medical doctor. She is not going to testify to a medical procedure." Defendants asked no follow up questions on cross-examination, and, as noted, Dr. Najafi was not permitted to testify. Plaintiff's testimony that "it is my understanding that there was a procedure, a surgery, that could definitely help me" is

---

**4**      We note that Defendants argue Plaintiff should not have been allowed to testify about her understanding of the results of the CT scan and the MRI, while also relying on her testimony about her understanding of what Dr. Najafi told her about the surgery to argue the award of future damages is not supported by the evidence. Defendants cannot have it both ways: They cannot claim that Plaintiff's understanding is both inadmissible and that it disproves a portion of her claimed damages.

insufficient to undermine the jury's decision to award her $175,000 for future pain and suffering.

To the extent Defendants argue that an award of future pain and suffering required expert testimony, we disagree for largely the same reasons discussed above. Plaintiff testified her neck has hurt since the accident, and that it still hurt five years later at the time of trial despite undergoing physical therapy, acupuncture, and an epidural. The jury could reasonably infer from this evidence that the pain was reasonably certain to continue into the future. (See, e.g., *Mendoza v. Rudolf* (1956) 140 Cal.App.2d 633, 636-637 [evidence that the plaintiffs continued to suffer pain at time of trial "tended to prove future damages, supporting an award therefore"].)

## DISPOSITION

The judgment is affirmed, and Plaintiff shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                    /s/
                                            EARL, J.



We concur:



        /s/
ROBIE, Acting P. J.



        /s/
HULL, J.


17